Charles A. BROWN, Appellant,

v.

**COMMISSION FOR LAWYER DISCIPLINE, Appellee.**

No. 04–96–00398–CV.

Court of Appeals of Texas, San Antonio.

July 29, 1998.

Charles A. Brown, San Antonio, for appellant.

Linda Acevedo, Asst. Gen. Counsel, Office of the General Counsel, Austin, Stephan B. Rogers, Akin, Gump, Strauss, Hauer & Feld, L.L.P., San Antonio, Kelly Putney Rogers, Boerne, for appellee.

Before HARDBERGER, RICKHOFF and ANGELINI, JJ.

## OPINION

RICKHOFF, Justice.

Charles A. Brown appeals a judgment finding that he violated two rules of professional conduct, suspending him from the practice of law, and ordering him to pay attorney fees to the Commission for Lawyer Discipline. In five points of error, he argues that the evidence is factually and legally insufficient to sustain the findings that he violated the rules, that the rules are unconstitutionally vague, that the court held him responsible for violating a repealed rule, that the Commission is not entitled to the attorney fee award because it was represented by attorneys acting *pro bono,* and that the amount of attorney fees awarded was erroneous. We conclude that Brown's arguments are not well taken. Accordingly, we affirm

the judgment, but reform it to delete the reference to the repealed rule.

## FACTUAL AND PROCEDURAL BACKGROUND

In November 1991, Brown agreed to represent Sucellen Humphrey (also known as Sucellen or Nicole Hayes) in a suit to recover damages arising from an automobile accident. Their written contract indicates that Brown would pursue a cause of action against the driver of the other vehicle and his insurer, State Farm. Brown testified that they also contemplated a product liability claim against General Motors, the manufacturer of Humphrey's car. During the course of the representation, Brown issued letters of protection to Humphrey's medical providers. The letters stated in relevant part:

> Please forward all billings and medical reports directly to me, as I will pursue the recovery of all medical, hospital, etc. costs directly from *State Farm Insurance Co.*, and assure that you are paid the amounts billed pursuant to this letter of protection.

Through these letters, Brown protected approximately $16,000 of Humphrey's medical expenses. He testified that he believed the letters obligated him to pay the medical providers.

In September of 1992, State Farm settled the case with Humphrey for $50,000. State Farm deducted $3000 from this amount for insurance payments already made. Of the remaining $47,000, Brown gave himself $16,667 (representing his 1/3 contingency fee), gave Humphrey $6333, and deposited the remaining amount in a joint investment checking account in his and Humphrey's names.

Between December 1, 1992, and January 8, 1993, Brown wrote eight checks on the joint account. The first one, for $4500, was co-signed by Humphrey. This money was a loan from Humphrey to Brown so that Brown could buy office equipment. The money was eventually paid back with interest. The other seven checks were signed only by Brown. According to Brown, some of the money was used on behalf of Hum-

phrey for items such as rental car expenses. But some of it was also used for Brown's personal or office expenses. Although he did not get Humphrey's permission before writing each check, he claimed that he and Humphrey had an informal agreement that he could take "advances" from the account and repay the money directly to the account or to the medical providers. Brown's testimony indicates that they agreed to put the money in the joint account, rather than paying the medical providers, so the money could be used to pursue litigation against General Motors.

In April of 1993, Humphrey filed a grievance against Brown, claiming he had taken money from the joint account without her consent and without repaying it. At that time, no more than $2500 of the $16,000 in medical bills had been paid and no money from the joint account had been expended toward the General Motors litigation. After the disciplinary petition was filed, Brown and Humphrey reached a settlement whereby Humphrey released Brown, and Brown paid Humphrey $3000 and assumed responsibility for paying certain medical providers to whom he had issued letters of protection. Humphrey did not testify at the disciplinary proceeding.

After a nonjury trial, the trial court determined that Brown violated Rules 1.14(c) and 8.04(a)(3) of the Texas Disciplinary Rules of Professional Conduct. Brown was suspended from the practice of law for nine months and ordered to pay the State Bar of Texas $7200 in attorney fees.

## SUFFICIENCY OF THE EVIDENCE

▮ Although Brown filed a request for findings of fact and conclusions of law, the trial court did not make the findings and conclusions. Brown did not call this failure to the trial court's attention by filing a notice of past due findings of fact and conclusions of law. *See* TEX.R. CIV. P. 297. He thus waived any complaint regarding the court's failure to make the findings and conclusions.[1] *See Las Vegas Pecan & Cattle Co. v. Zavala County,*

---

1. This court has previously denied a motion by Brown to order the trial court to file the findings    of fact and conclusions of law.

682 S.W.2d 254, 255 (Tex.1984); *Pierson v. GFH Fin. Servs. Corp.*, 829 S.W.2d 311, 314 (Tex.App.—Austin 1992, no writ). Accordingly, we must affirm the judgment on any legal theory the evidence supports. *See Pierson*, 829 S.W.2d at 314. We presume the trial court resolved all questions of fact in support of the judgment. *See Hanners v. State Bar*, 860 S.W.2d 903, 912 (Tex.App.—Dallas 1993, writ dism'd); *Pierson*, 829 S.W.2d at 314.

■ The legal and factual sufficiency of the trial court's implied findings may be challenged on appeal in the same manner as jury findings. *See Hanners*, 860 S.W.2d at 912. In reviewing a "no evidence" or legal sufficiency point, we consider only the evidence favorable to the trial court's decision and disregard all evidence and inferences to the contrary. *See K.C. Roofing Co., Inc. v. Abundis*, 940 S.W.2d 375, 377 (Tex.App.—San Antonio 1997, writ denied). In reviewing a factual sufficiency point, we assess all the evidence and reverse for a new trial only if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *See id.*

### 1. Violation of Rule 1.14(c)

In his first point of error, Brown argues the evidence is legally and factually insufficient to establish that he violated Rule 1.14(c) of the Texas Disciplinary Rules of Professional Conduct. That rule provides, in relevant part:

> When in the course of representation a lawyer is in possession of funds or other property in which both the lawyer and other person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interest.

TEX. DISCIPLINARY R. PROF. CONDUCT 1.14(c) (1989), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon Supp.1998) (STATE BAR RULES art. X, § 9).

■ Focusing first on the phrase "[w]hen ... a lawyer is in possession of funds," Brown argues that he was not "in possession" of the funds because they were in a joint account upon which either he or Humphrey could write checks. This argument is unconvincing. The evidence established that Brown received the funds from State Farm as settlement of Humphrey's case and deposited them in the joint account. As joint owner of the account, Brown had control over the funds. He exercised this control by writing checks on the account and using the money for his own purposes. This evidence of Brown's control over the funds is both legally and factually sufficient to establish that he was "in possession" of the funds. *Cf. Aetna Cas. & Sur. Co. v. Protective Ins. Co.*, 661 S.W.2d 291, 292 (Tex.App.—Houston [1st Dist.] 1983, no writ) (" 'Possession' connotes the right to exercise dominion and control...").

■ Focusing next on the language "the property shall be kept separate by the lawyer until there is an accounting and severance of their interest," Brown argues that the funds were kept separate by being placed in the joint account. The undisputed evidence establishes that Brown wrote checks on the joint account, deposited the money into his personal account, and used the money for his own purposes. Clearly, the funds were not "kept separate."

■ Finally, Brown argues that his actions were authorized by Rule 1.14(b), which provides:

> Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. *Except* as stated in this rule or otherwise permitted by law or *by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive* and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

TEX. DISCIPLINARY R. PROF. CONDUCT 1.14(b) (1989) (emphasis added). Relying on the italicized language, Brown asserts that Humphrey consented to his actions. This language does not make consent an exception to the rule against commingling. Rule 1.14(b) merely allowed Humphrey to agree to a delay in delivery of the funds; it does not

address the manner in which Brown was required to keep the funds pending delivery. Rules 1.14(a) and 1.14(c) address that issue and expressly prohibit commingling. *See* TEX. DISCIPLINARY R. PROF. CONDUCT 1.14(a) ("A lawyer shall hold funds and other property belonging in whole or in part to clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own property."); TEX. DISCIPLINARY R. PROF. CONDUCT 1.14(c) ("When in the course of representation a lawyer is in possession of funds or other property in which both the lawyer and other person claim interests, the property shall be kept separate....").

"Throughout the history of our profession, a lawyer has been required to treat the property of a client in accordance with the highest standards of accountability." Robert P. Schuwerk & John F. Sutton, Jr., *A Guide to the Texas Disciplinary Rules of Professional Conduct*, 27A HOUS. L.REV. 1, 199–200 (1990). The prohibition on commingling, set forth in Rule 1.14, is one of the principal aspects of those standards. *See id.* As one court has explained, the prohibition on commingling is both a prophylactic measure and a method for avoiding even the appearance of impropriety:

> [The rule ] guards against the dangers of commingling; the probability in some cases, the possibility in many cases, and the danger in all cases that such commingling will result in loss of the clients' funds. .... It calls for a reasonable manner of handling the clients' funds; ... it avoids the appearance of impropriety, and assures that there will be no loss of the clients' funds despite "good intentions." To comply with it, all that is required is good office management.

*See Archer v. State*, 548 S.W.2d 71, 74 (Tex. Civ.App.—El Paso 1977, writ ref'd n.r.e.). An equally important reason for prohibiting commingling is the danger that funds in a commingled account will be viewed as the lawyer's property, rather than the client's, and will thus be subject to the claims of the lawyer's creditors. *See* TEX. DISCIPLINARY R. PROF. CONDUCT 1.14 cmt. 2 (1989). There is no indication in the record that Humphrey understood this danger.

Because of the fundamental nature of the principles underlying commingling and the serious dangers associated with the vice, courts typically give little or no weight to the fact that a commingling violation was technical, ignorant, or inadvertent, or that the client was not harmed. *See* Schuwerk & Sutton, *supra*, at 200 & nn. 3–6 (citing cases). At least one court has stated that a client's consent to commingling is irrelevant. *See Archer*, 548 S.W.2d at 74 (construing the predecessor to Rule 1.14).

Considering the lack of express language allowing consent to commingling and the policies that underlie the prohibition against it, and given the state of this record, Brown can take no refuge in Humphrey's purported consent.

## 2. Violation of Rule 8.04(a)(3)

■ In his second point of error, Brown argues the evidence is legally and factually insufficient to support the court's finding that he violated Rule 8.04(a)(3), which provides that a lawyer shall not "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The letter of protection that Brown sent to Humphrey's medical providers stated, "Please forward all billings and medical reports directly to me, as I will pursue the recovery of all medical, hospital, etc. costs directly from *State Farm Insurance Co.*, and assure that you are paid the amounts billed pursuant to this letter of protection." The letters clearly indicated that Brown would pay the medical providers when he obtained a recovery from State Farm. Nevertheless, he deposited the State Farm recovery into the joint account, ostensibly to finance further litigation, and used part of the money for his own purposes. This evidence is legally and factually sufficient to establish dishonesty. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 650 (1981) (defining "dishonesty" as including "lack of honesty, probity, or integrity in principle" and "lack of ... straightforwardness").

### CONSTITUTIONALITY

■ In his third point of error, Brown argues that Rules 1.14(c) and 8.04(a)(3) are unconstitutionally vague. The Commission responds that this issue has been waived due to failure to raise the issue in the trial court and failure to brief the issue adequately in this court. As the Commission notes, a constitutional claim must first be raised in the trial court before it may be considered on appeal. *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex.1993); *State Bar v. Leighton*, 956 S.W.2d 667, 671 (Tex.App.—San Antonio 1997), *pet. denied per curiam*, 964 S.W.2d 944 (1998); *see also Wood v. Wood*, 159 Tex. 350, 320 S.W.2d 807, 813 (1959) ("[T]he constitutionality of a statute will be considered only when the question is properly raised and a decision becomes necessary and appropriate to the disposal of the case and no statute should be overruled without careful and mature consideration.").

During his closing argument, Brown's attorney argued:

Now, the rules, like all other rules of the State Bar and other procedures, violate yet another fundamental principle that we know and believe in our jurisprudence and that is that prohibitions and accusations must be clear and definite and what they would ask you, because there are other provisions of the rule that talk about essentially unseemly conduct and so on and so forth. Most of those, when challenged, as applied to specific facts, have been held to be unconstitutionally vague and unenforceable under both Texas law and federal law, but that's what they would have you convict Mr. Brown of, and it is a conviction. I mean, he loses a valuable property right and he is stigmatized by an adverse finding. That's really in the nature of a criminal sanction, and they would have you do that without evidence.

Although the attorney could have stated his contention more specifically, we believe this argument was sufficient to raise the issue of whether Rules 1.14 and 8.04(a)(3) are unconstitutionally vague.

The Commission further argues that Brown, who is acting *pro se* on appeal, has failed to brief his constitutional arguments

adequately in this court. Brown's third point of error states, "Rule 8.04(a)(3) is unconstitutional because it is so vague and unclear as to place a defendant in a position of being unable to interpret what course of conduct may violate said Rule." In his argument under this point of error, however, Brown argues that Rule 1.14(c) is unconstitutionally vague. The only argument regarding the unconstitutionality of Rule 8.04(a)(3) is found in the brief's conclusion, where in one sentence Brown states:

Further, it is clear that other than the term fraud which has a broad definition and requires approve [sic] of violation of moral reputed, [sic] none of the other terms are actually defined any where in the code and are broad and vague and not sufficiently subject to interpretation and understanding as to allow a person to understand the actions which may violate these broad and general terms, and therefore it is unconstitutional vague [sic].

Brown cites no authority to support his argument that either rule is unconstitutionally vague.

■ We agree with the Commission that ordinarily such inadequate briefing would result in waiver of the issue. *See Fredonia State Bank v. American Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex.1994); *Kosowska v. Khan*, 929 S.W.2d 505, 509 (Tex.App.—San Antonio 1996, writ denied). But the supreme court has held that a reviewing court should address constitutional issues that are raised but not adequately argued in a brief. *See Federal Sign v. Texas Southern Univ.*, 951 S.W.2d 401, 410 (Tex.1997). Accordingly, we will address Brown's vagueness arguments.

Brown argues that Rule 1.14(c) is unconstitutionally vague because it conflicts with Rule 1.14(b). Although couched as a vagueness argument, this argument is actually a reiteration of the assertion that Rule 1.14(b) allows a client to consent to commingling. Brown asserts that because Rule 1.14(b) allows for consent and Rule 1.14(c) does not, the two rules conflict. As explained in the discussion of the first point of error, the language of both rules can easily be given effect and harmonized. Because there is no

conflict, Brown's vagueness argument must fail.

■ Brown argues that Rule 8.04(a)(3) is unconstitutionally vague because its terms are not sufficiently subject to interpretation so as to allow a person to understand what actions violate the rule.

■ A statute, rule, regulation, or order is fatally vague only if it exposes a potential actor to some risk or detriment without giving fair warning of the nature of the proscribed conduct. *See Texas Liquor Control Bd. v. Attic Club, Inc.*, 457 S.W.2d 41, 45 (Tex.1970); *State Bar v. Tinning*, 875 S.W.2d 403, 408 (Tex.App.—Corpus Christi 1994, writ denied). Due process is violated only when a required course of conduct is stated in terms so vague that persons of common intelligence must guess at what is required or when there is a substantial risk of miscalculation by those whose acts are subjected to regulation. *See Texas Liquor Control Bd.*, 457 S.W.2d at 45; *Tinning*, 875 S.W.2d at 408. When applying the fair notice test, courts allow statutes regulating business activity greater leeway than they allow penal statutes. *See Pennington v. Singleton*, 606 S.W.2d 682, 689 (Tex.1980); *Tinning*, 875 S.W.2d at 408. In particular, when applying the fair notice test to rules governing lawyers, courts take into consideration the skills and resources available to lawyers to assist them in evaluating the propriety of their conduct. *See People v. Morley*, 725 P.2d 510, 516 (Colo.1986); *Tinning*, 875 S.W.2d at 408. The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas that find adequate interpretation in common usage and understanding. *See Tinning*, 875 S.W.2d at 408.

Applying these principles to Rule 8.04(a)(3), we conclude that it gives fair warning of the nature of the proscribed conduct. The rule is stated in the disjunctive, prohibiting "conduct involving dishonesty, fraud, deceit or misrepresentation," and the trial court did not state which of these four types of conduct Brown committed. Although we note that the terms "fraud," "deceit," and "misrepresentation" are frequently used in the law, we confine our review to the term "dishonesty" because that is the ground upon which we have affirmed the trial court's Rule 8.04(a)(3) ruling. *See Spurlock v. Texas Dep't of Protective & Regulatory Servs.*, 904 S.W.2d 152, 160 (Tex.App.—Austin 1995, writ denied); *Raitano v. Texas Dep't of Pub. Safety*, 860 S.W.2d 549, 550–51 (Tex.App.—Houston [1st Dist.] 1993, writ denied). As we noted above, "dishonesty" is defined as "lack of honesty, probity, or integrity in principle" and "lack of . . . straightforwardness." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 650 (1981). This definition is not so vague that a lawyer of common intelligence would have to guess at its meaning. A lawyer of common intelligence would realize that the use of the misleading letters of protection and the use of settlement funds for personal and office expenses demonstrate a lack of probity, integrity, and straightforwardness. *Cf. Morley*, 725 P.2d at 515–16 ("highest standards of honesty, justice, or morality" not unconstitutionally vague); *In re Disciplinary Proceedings Against Schalow*, 131 Wis.2d 1, 388 N.W.2d 176, 181–82 (1986) ("dishonesty, fraud, deceit or misrepresentation" not unconstitutionally overbroad). We reject Brown's argument that Rule 8.04(a)(3) is unconstitutionally vague as applied to him.

### VIOLATION OF REPEALED STATUTE

■ In his fourth point of error, Brown argues the trial court erred in concluding that his violations of the rules constitute "professional misconduct as defined by Article X, Section 7 of the State Bar Rules." Before the commencement of this disciplinary action, sections 1 through 8 of article X of the State Bar Rules were repealed and replaced with the Texas Rules of Disciplinary Procedure. *See* TEX.R. DISCIPLINARY P. 1.04 (1992), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A–1 (Vernon Supp. 1998).

Article X, section 7, entitled "Grounds for Discipline," stated:

Discipline may be imposed for professional misconduct which includes:

(1) Acts or omissions by a lawyer, individually or in concert with another person or persons, which violate the Texas Code

of Professional Responsibility, whether or not the acts or omissions occurred in the course of a lawyer-client relationship. . . .

Article X, section 8, rendered "professional misconduct" a ground for sanctions. The current versions of these provisions are now found in Rules 1.06(Q)(1) and 3.09 of the Texas Rules of Disciplinary Procedure. Professional misconduct is still a ground for sanctions. *See* TEX.R. DISCIPLINARY P. 3.09. And as in the predecessor statute, "Professional Misconduct" is defined as including "[a]cts or omissions by an attorney, individually or in concert with another person or persons, that violate one or more of the Texas Disciplinary Rules of Professional Conduct." *See* TEX.R. DISCIPLINARY P. 1.06(Q)(1). The only relevant difference between Rule 1.06(Q)(1) and article X, section 7, is that the old statute referred to the then-applicable Code of Professional Responsibility, while the new provision refers to the currently applicable Disciplinary Rules of Professional Conduct.

The Commission's pleadings alleged that Brown violated Rules 1.14 and 8.04(a)(3) of the Disciplinary Rules of Professional Conduct, the Commission's closing argument specifically referred to violations of the Disciplinary Rules of Professional Conduct, and the judgment states that Brown violated rules 1.14(c) and 8.04(a)(3) of the Disciplinary Rules of Professional Conduct. It is thus apparent that the court found Brown violated the currently applicable rules and that the reference to Article X, section 7, is merely a clerical error in the judgment. We will exercise our authority to correct this error. *See* TEX.R.APP. P. 80(b)(2) (former rule);[2] *Williams v. State,* 911 S.W.2d 788, 791 (Tex. App.—San Antonio 1995, no pet.).

### ATTORNEY FEES

In his fifth point of error, Brown argues the trial court erred in awarding attorney fees to the Commission. The Rules of Disciplinary Procedure allow the Commission to receive an award for attorney fees. *See*

TEX.R. DISCIPLINARY P. 1.06(T)(b). A reviewing court will not overturn a trial court's allowance of attorney fees unless the award constitutes a clear abuse of discretion. *See Lancer Corp. v. Murillo,* 909 S.W.2d 122, 125–26 (Tex.App.—San Antonio 1995, no writ). The test for abuse of discretion is whether the trial court acted arbitrarily. *See id.* at 126.

### 1. Constitutionality

Brown asserts that the rule allowing an award of attorney fees to the Commission is unconstitutional because it does not also allow a prevailing defendant to recover attorney fees. This issue was not raised in the trial court; therefore, it is waived on appeal. *See Dreyer,* 871 S.W.2d at 698.

### 2. Recoverability of Pro Bono Fees

Brown also argues that the Commission is not entitled to an award of attorney fees because the lawyers representing the Commission in this case did so on a *pro bono* basis. The Commission acknowledges that the trial attorneys provided their services on a *pro bono* basis with the intention of donating the value of their services to the Bar. Brown asserts that an attorney fee award is only authorized if the Commission actually incurs or is contractually liable for attorney fees. The rule, however, is not written so narrowly. It states:

The term "Sanction" may include the following additional ancillary requirements:

. . . .

b. Payment of Reasonable Attorneys' Fees and all direct expenses associated with the proceedings.

TEX.R. DISCIPLINARY P. 1.06(T)(b). The term "Reasonable Attorneys' Fees" is defined as "a reasonable fee for a competent private attorney, under the circumstances." TEX.R. DISCIPLINARY P. 1.06(R). Among the factors that may be considered in determining the reasonableness of the fee are the time, labor, and skill required; the novelty and difficulty of the issues; the customary fee in the locali-

**2.** The current version of this rule is found in Rule 43.2(b). Although there appears to be no difference in meaning between the former rule and the current rule, we cite Rule 80(b)(2) because this

appeal was perfected before September 1, 1997. *See* Order on Final Approval of Revisions to the Texas Rules of Appellate Procedure, Item 2 (Tex. Sup.Ct., Aug. 15, 1997).

ty; the amount involved and the results obtained; the time limitations imposed by the circumstances; and the experience, reputation, and ability of the lawyers performing the services. *See id.* Neither Rule 1.06(T)(b) nor Rule 1.06(R) expressly requires that fees be contracted-for or incurred; the rules merely require that an award of attorney fees be reasonable.

For reasons of public policy, the federal courts have allowed *pro bono* attorneys to recover attorney fees under the Equal Access to Justice Act. *See, e.g., Watford v. Heckler,* 765 F.2d 1562, 1567 n. 6 (11th Cir. 1985); *Cornella v. Schweiker,* 728 F.2d 978, 985–87 (8th Cir.1984); *see also* Gregory G. Sarno & Anne M. Payne, Annotation, *Recoupment of Attorney Fees, Under Equal Access to Justice Act (EAJA) (28 USCS § 2412), By Litigant Represented by Counsel to Whom No Fee is Paid by Litgant,* 121 A.L.R.FED. 291 (1994). The courts have reached this result even though the EAJA expressly authorizes a prevailing party to receive an award for attorney fees that have been "incurred." 28 U.S.C.A. § 2412(d)(1)(A) (West Supp.1998). For similar reasons of public policy, we are persuaded that the Commission is entitled to the attorney fee award in this case.

First, the rule authorizing the award of attorney fees describes the award as a "sanction." This is some indication that the primary purpose of the award is to deter and punish conduct that violates the disciplinary rules, rather than to reimburse the Commission for costs it has actually incurred.

Second, allowing an attorney fee award in this situation encourages *pro bono* service to the Bar. The legal profession is charged with seeking improvement of the administration of justice and the quality of legal service rendered by the profession. *See* TEX. DISCIPLINARY R. PROF. CONDUCT preamble ¶ 5 (1989). "A lawyer should aid the legal profession in pursuing these objectives and should help the bar regulate itself in the public interest." *Id.* By agreeing to represent the Commission *pro bono,* the lawyers sought to donate the value of their services, $7200, to the Commission. If we denied the attorney fee award in this case, the donation intended for the Commission would effectively go to the lawyer subjected to discipline instead. *Cf. Copeland*

*v. Marshall,* 641 F.2d 880, 900 (D.C.Cir.1980) (en banc) (noting that there is "nothing 'inconsistent in prosecuting a case in the public interest, agreeing not to charge one's *own* client a fee, and thereafter seeking fees' from the losing *defendant*") (quoting *Keyes v. School Dist. No. 1,* 439 F.Supp. 393, 406–07 (D.Colo.1977)). Such a result would hardly encourage future *pro bono* representation.

For these reasons, we conclude that the trial court did not abuse its discretion in awarding attorney fees to the Commission even though the lawyers representing it did so on a *pro bono* basis.

### 3. Failure to Segregate

■ Finally, Brown argues that the court abused its discretion by awarding $7200 as an attorney fee because the lawyers used part of their time pursuing another complaint against Brown which they eventually decided to drop.

Brown's attorney stipulated twice that the amount of fees requested was reasonable. In his opening statement, the attorney stated, "[W]e have no doubt that the amount involved is reasonable, so there's no reason for there to be testimony on that. We ·will stipulate to the reasonableness of that attorney's fee." Before the attorney fee testimony was taken, Brown's attorney stated, "I will stipulate that the attorney's fees are reasonable but it is my opinion that they cannot be recovered." One of the lawyers testified without objection that 63.4 hours have been "billed" on this case, but that not all time spent on the case was billed or accounted for. In particular, the 63.4 hours did not include the time spent at trial. The hourly rate charged was $110, and the total amount sought was $7200. During cross-examination, the lawyer testified that "[p]robably less than 30 percent" or "maybe a third" of his time was spent on matters that were eventually dropped. Brown's attorney then commented, "Well, it's all interrelated." During redirect examination, the lawyer testified that they did no work on one of the matters that was abandoned and did no significant work on the other abandoned matter.

■ To establish the reasonableness of attorney fees, a party seeking attorney

fees must show that the fees resulted from suing the party sought to be charged with the fees on a claim that allows recovery of the fees. *See Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 10 (Tex.1991). A party seeking attorney fees has a duty to segregate nonrecoverable fees from recoverable fees. *See id.* at 11. A recognized exception to the segregation requirement exists when the attorney fees rendered are in connection with claims that are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts. *See id.* The segregation requirement can also be waived if the opposing party fails to object to unsegregated proof. *See id.* (reversal is required if "a party refuses, *over objection,* to offer evidence segregating attorney's fees") (emphasis added); *Osoba v. Bassichis,* 679 S.W.2d 119, 123 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (where appellees offered no evidence segregating attorney fees, but appellant failed to object to their unsegregated proof of attorney fees, the issue was waived).

The lawyer's testimony indicates that $7200 was an approximation of the amount of reasonable fees. It did not include all work done on the case or the time spent at trial. The testimony is also far from certain regarding the amount of time spent on abandoned matters. But Brown failed to object to the Commission's unsegregated proof that $7200 was a reasonable fee. Instead, he stipulated twice that the amount was reasonable and stated that the matters were interrelated. Given this state of the record, the trial court would have been justified in concluding that the time spent on the abandoned matters did not constitute a substantial, severable portion of the $7200 requested and that $7200 was a reasonable approximation of the actual value of the representation. The court did not abuse its discretion.

### CONCLUSION

For the reasons stated herein, the judgment of the trial court is affirmed as reformed.