Diana S. PENA, Appellant,

v.

Omar Ismael PENA, Appellee.

No. 13–97–793–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 30, 1998.

Rehearing Overruled March 11, 1999.

---

Richard B. Gould, McAllen, for appellant.

Roel Flores, McAllen, Alfredo Morales, Jr., Edinburg, for appellee.

Before Chief Justice SEERDEN and Justices DORSEY and CHAVEZ.

## OPINION

SEERDEN, Chief Justice.

Diana S. Pena appeals from a divorce decree awarding joint managing conservatorship of the child, J.R., to both Diana and Omar I. Pena. By five points of error, Diana contends that credible evidence of family violence by Omar prohibited his appointment as a joint managing conservator, and that the trial judge was disqualified to hear the case. We affirm.

■ By her first and second points of error, Diana complains that the trial court abused its discretion in appointing Omar as joint managing conservator because the evidence showed as a matter of law, and by the great weight and preponderance, a pattern and history of physical abuse by Omar against Diana and one of her children.

■ The Texas Family Code provides that "[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM.CODE ANN. § 153.002 (Vernon 1996). The trial court has wide discretion in determining what is in the best interest of the child and its judgment regarding conservatorship will not be disturbed on appeal unless it is shown from the record as a whole that the court abused its discretion. *Gillespie v. Gillespie,* 644 S.W.2d 449, 451 (Tex.1982); *Cole v. Cole,* 880 S.W.2d 477, 479 (Tex.App.—Fort Worth 1994, no writ); *Hopkins v. Hopkins,* 853 S.W.2d 134, 136 (Tex.App.—Corpus Christi 1993, no writ).

■ However, the Family Code further states that a history of domestic violence by a parent should be considered by the trial court and is inconsistent with that parent's appointment as a joint managing conservator. The code provides as follows:

(a) In determining whether to appoint a party as a sole or joint managing conservator, the court shall consider evidence of the intentional use of abusive physical force by a party against the party's spouse or against any person younger than 18 years of age committed within a two-year period preceding the filing of the suit or during the pendency of the suit.

(b) The court may not appoint joint managing conservators if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by one parent directed against the other parent, a spouse, or a child.

(c) The court shall consider the commission of family violence in determining whether to deny, restrict, or limit the possession of a child by a parent who is appointed as a possessory conservator.

TEX. FAM.CODE ANN. § 153.004 (Vernon 1996). Accordingly, a trial judge making a custody determination must consider credible evidence of violence committed by one parent against the other. *Interest of M.R.,* 975 S.W.2d 51 (Tex.App.—San Antonio 1998, review denied).

In imposing a joint conservatorship on parties that have not already agreed to it, the trial court must consider certain statutory factors, including the ability of the parents to give first priority to the welfare of the child and reach shared decisions in the child's best interest. TEX. FAM.CODE ANN. § 153.134(a)(2) (Vernon 1996).

In the present case, Diana testified that Omar hit her in the face on two occasions during arguments about his daughters and his ex-wife, causing a black eye each time, and that Omar once dragged her and tore her jeans.[1] Diana's cousin, Laura Garcia, testified that she saw one of the black eyes which Diana attributed to Omar. Omar testified at trial but did not deny the allegations that he hit and dragged Diana.

While Diana's uncontroverted testimony concerning two hitting incidents and one dragging incident amounts to evidence of

---

1. Diana also testified to other incidents that, while not evidence of physical abuse, tended to show that Omar was unfit to have joint custody of J.R. Diana testified that Omar verbally abused both her and her older son, that when he got upset Omar would slam his hand on the wall several times and yell, that she had seen Omar use and sell cocaine out of their house, and that Omar attempted to commit suicide on one occasion by putting a sawed off shotgun to his mouth and had mentioned or threatened suicide on two other occasions.

physical abuse, it does not necessarily establish a history or pattern of abuse sufficient to prohibit the trial court from ordering a joint managing conservatorship. The phrase "history or pattern" is not defined by the statute. However, similar phrases in other statutes prohibiting a "pattern of racketeering activity" have been interpreted to require more than merely repeated instances of the prohibited conduct, but must include some relationship among the separate instances that tends to connect them and to show a threat of continuing violations. *See H.J., Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 2900–01, 106 L.Ed.2d 195 (1989) (interpreting the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968). Another federal court concluded that the phrase "pattern or practice" in violation of the Civil Rights Act must be shown by more than isolated or accidental violations, but requires intentional, regular or repeated violation of the right granted by the Act. *United States v. Hunter,* 459 F.2d 205, 217 (4 th Cir.1972) (cited in BLACK'S LAW DICTIONARY 1015 (5 th ed.1979), defining "pattern").

In the present context of domestic abuse, moreover, not only the phrase "history or pattern," but also the very nature of "physical abuse," remains subject to wide variations and varying interpretations. Therefore, each case must be carefully considered according to its specific factual situation.

In the present case, the two hitting incidents left Diana with a black eye each time. However, Diana's testimony only vaguely connects the two hitting incidents as both having been precipitated by arguments over Omar's ex-wife and daughters. We do not know who initiated the arguments, whether the hittings were provoked in any manner, or what other factors may have contributed to either or both incidents, or any other relevant details that may show a relationship, connection or predictable "pattern" of physical abuse.

While we do not suggest that the trial court would err in finding a pattern of physical abuse on the present record, neither do the facts establish such a pattern as a matter

of law. We overrule Diana's first and second points of error.

■ By her third point of error, Diana contends that the *great weight and preponderance* of the evidence showed that her appointment as sole *managing conservator* would have been in the best interest of the child. As we stated earlier, the trial court has wide discretion in determining what is in the best interest of the child. *Gillespie,* 644 S.W.2d at 451; *Cole,* 880 S.W.2d at 479; *Hopkins,* 853 S.W.2d at 136.

Diana points to evidence before the trial court that she had stable employment in San Antonio, that J.R. got along well with her two other children by a prior marriage, that Omar had not been able to maintain stable employment as a salesman, that he had gotten $12,000 behind in child support for his own children by a prior marriage and was still $2,800 behind, that Diana had seen Omar use cocaine and sell drugs out of their house, that Omar spanked J.R. on occasion and had yelled at him to the point that he would cry, and that Omar once had J.R. sleep in the same bed with Omar and his girlfriend.

However, the trial court also heard evidence that Omar had a very good relationship with J.R., that J.R. spoke highly of him, and that Omar was a good parent, that it was in J.R.'s interest to remain close to his grandparents on both sides, who lived in the Rio Grande Valley as did Omar, that Omar had temporary custody of J.R. during the week for the nine-month period before the hearing and took him to and from school and other events, and that Omar has now been employed at the same place for the past five years.

Accordingly, we conclude that the great weight of the evidence did not predominate in favor of appointing Diana sole managing conservator and that the trial court acted within its discretion in appointing both parties joint managing conservators. We overrule Diana's third point of error.

■ By her fourth and fifth points of error, Diana complains that the trial judge was disqualified to hear the present case because he had a pecuniary interest in the outcome

by virtue of his attorney-client relationship with Omar's attorney.

■ In Texas, judges may be removed from a particular case either because they are constitutionally disqualified, TEX. CONST. art. V, § 11, because they are subject to a statutory strike, TEX. GOV'T CODE ANN. § 74.053(d) (Vernon 1998), or because they are recused under rules promulgated by the Texas Supreme Court. TEX.R. CIV. P. 18b; TEX .R.APP. P. 16. The grounds and procedures for each type of removal are fundamentally different. *In re Union Pacific Resources Co.*, 969 S.W.2d 427 (Tex.1998); *see generally* W. Kilgarlin & J. Bruch, *Disqualification and Recusal of Judges*, 17 ST. MARY'S L.J. 599 (1986).

■■ If a judge is disqualified under the Constitution or subject to disqualification under Texas Government Code § 74.053(d), he is absolutely without jurisdiction in the case, and any judgment rendered by him is void, without effect, and subject to collateral attack. *In re Union Pacific Resources Co.; Gulf Maritime Warehouse Co. v. Towers*, 858 S.W.2d 556, 559 (Tex.App.-Beaumont 1993, writ denied) (citing *Disqualification and Recusal of Judges*, 17 ST. MARY'S L. J at 601–02). However, the existence of statutory grounds for recusal of a judge does not void or nullify subsequent proceedings before that judge and can be waived if not raised by proper motion. *In re Union Pacific Resources Co.; Gulf Maritime Warehouse Co.*, 858 S.W.2d at 559.

The attorney for appellee also represented the trial judge in an unrelated matter. Thus, appellant argues that the judge had a direct interest in the outcome of this case. Appellant contends: "It is pretty fundamental that smart clients do not want to do things to make their lawyers angry at time. Smart clients keep their lawyers happy." We question that this statement is a fundamental principal of jurisprudence.

■ The Texas Constitution disqualifies a trial judge from sitting "in any case wherein he may be interested." TEX. CONST. art. V, § 11. Similarly, Texas Rule of Civil Procedure 18b(1)(b) requires a judge to disqualify himself from any case in which he may have "an interest in the subject matter in controversy." However, the interest of a judge, in order that he may be disqualified, must, in general, be a direct pecuniary or property interest in the subject matter of litigation. *Gulf Maritime Warehouse Co.*, 858 S.W.2d at 558.

Moreover, the Texas Supreme Court has indirectly rejected the claim that an attorney-client relationship between the trial judge and opposing counsel amounts to a constitutionally disqualifying interest in the litigation. In *Monroe v. Blackmon*, 946 S.W.2d 533 (Tex.App.—Corpus Christi 1997, orig. proceeding), the relators filed a motion to recuse the trial judge on the ground that a partner in the law firm representing the other party in the underlying lawsuit was currently representing the trial judge in an unrelated lawsuit. Relators asked for and obtained a writ of mandamus from this Court, which found no adequate remedy by appeal and ordered that the trial judge be recused. The Texas Supreme Court, while it did not directly address whether representation of a judge by one of the attorneys is a proper ground for recusal, did issue mandamus reversing this Court on the ground that the relators had an adequate remedy by appeal. *In re Union Pacific Resources Co.*, 969 S.W.2d 427 (Tex.1998).

However, in finding an adequate remedy by appeal, the Texas Supreme Court necessarily implied that the trial judge was at most subject to *recusal* based on his relationship with opposing counsel, but not *disqualification*. Had the trial judge been constitutionally disqualified, the Court acknowledged that any further actions in the underlying case would have been void and subject to mandamus relief. *Id.*

Accordingly, we conclude that the trial judge's attorney-client relationship with opposing counsel does not amount to a constitutional disqualification.

■ As for the trial judge's duty to recuse himself in the present case under Rule 18b, Texas Rule of Civil Procedure 18a(a) requires that a motion for recusal "shall be verified and must state with particularity the grounds why the judge before

whom the case is pending should not sit." The procedural requirements for recusal set out in Rule 18a(a) are mandatory and a party who fails to comply waives his right to complain of a judge's failure to recuse himself. *McElwee v. McElwee,* 911 S.W.2d 182, 186 (Tex.App.—Houston [1 st Dist.] 1995, writ denied); *Wirtz v. Massachusetts Mut. Life Ins. Co.,* 898 S.W.2d 414, 422–23 (Tex.App.— Amarillo 1995, no writ); *Gulf Maritime Warehouse Co.,* 858 S.W.2d at 559–60; *Vickery v. Texas Carpet Co., Inc.,* 792 S.W.2d 759, 763 (Tex.App.—Houston [14th Dist.] 1990, writ denied); *Gaines v. Gaines,* 677 S.W.2d 727, 730 (Tex.App.—Corpus Christi 1984, no writ).

In the present case, Diana never filed a motion to recuse or disqualify the trial judge, but only an unverified motion for new trial. In that motion, Diana complained, among other things, that the trial judge's personal and attorney-client relationship with Omar's attorney was not disclosed to her, created a conflict of interest to her detriment, and that she was unable earlier to raise an objection to the judge hearing the case. However, her motion requested only a new trial and did not ask the trial judge to recuse himself from further proceedings. Neither did Diana's counsel ask at the hearing on motion for new trial that the trial judge recuse himself or refer the matter of recusal. Accordingly, we conclude that Diana waived her claim for statutory recusal by failing to specifically request it by a verified Rule 18a motion before the trial court. We overrule her fifth and sixth points of error.

The judgment of the trial court is AFFIRMED.