COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 




 
 
  
 CLEOTILDE
 GONZALEZ,
  
                             Appellant,
  
 v.
  
 TERESO
 GONZALEZ,
  
                             Appellee.
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
 No. 08-01-00453-CV
  
 Appeal from the
  
 388th District Court
  
 of El Paso County, Texas
  
 (TC#2000CM676)
 
 




 

MEMORANDUM
OPINION

This is an appeal from a final decree
of divorce.  We affirm.

Factual and
Procedural Background

Tereso Gonzalez filed a petition for
divorce from Cleotilde Gonzalez on the grounds of insupportability and cruelty.  Cleotilde filed a
counter-petition, seeking a divorce on the same grounds.  Both parties sought to be appointed as sole
managing conservator of their three children, Israel, Reina, and Eden. 
Pending the final hearing, Tereso was given
temporary primary custody of Israel and Reina; Cleotilde was given primary custody of Eden.








The trial court granted the divorce
on the ground of insupportability.  The court also appointed the parties joint
managing conservators of the children and gave Tereso
primary custody.  Cleotilde
was ordered to pay $100 in child support for six months, and $210 per month
thereafter.

The parties owned two houses.  In dividing the marital estate, the court
awarded the smaller home and its furnishings to Cleotilde
and the larger home and its furnishings to Tereso.  In accordance with the parties= wish, the court awarded each party
the cars that were in his or her possession. 
The court divided Tereso=s retirement plan equally between the
parties, but awarded Tereso=s thrift savings plan to the
children.

Cleotilde appeals pro se, challenging
the trial court=s decisions on conservatorship and
division of the marital estate.  She also
argues that the trial court should not have allowed certain witnesses to
testify.

Standard of
Review

Although Cleotilde
filed a request for findings of fact and conclusions of law, she did not file a
notice of past due findings of fact and conclusions of law when the court
failed to make the findings and conclusions. 
See Tex. R. Civ. P. 297. 
Accordingly, we presume that the trial court made implied findings that
support its decisions.  Brown v. Comm=n for Lawyer Discipline, 980 S.W.2d
675, 678-79 (Tex. App.--San Antonio 1998, no pet.).








A trial court=s decisions regarding conservatorship and property division are reviewed for an
abuse of discretion.  Sandone v. Miller-Sandone, 116 S.W.3d 204, 205 (Tex. App.--El Paso 2003,
no pet.).  A trial court abuses
its discretion when it acts arbitrarily or unreasonably.  Id. at 206.  The mere fact that the trial court may have
decided a matter differently than an appellate court does not demonstrate an
abuse of discretion.  Id.  Instead, we apply a two-pronged inquiry to
determine whether the trial court abused its discretion.  First, did the trial court have sufficient
information upon which to exercise its discretion?  Second, did the trial court err in its
application of discretion?  Lindsey v. Lindsey, 965 S.W.2d 589, 592 (Tex. App.--El Paso
1998, no pet.).








To answer the first question, we
apply the traditional sufficiency review standards.  Id. 
A trial court=s implied findings may be challenged on appeal in the same
manner as jury findings.  Brown, 980 S.W.2d at 679. 
When a party attacks the legal sufficiency of an adverse finding on an
issue on which she has the burden of proof, she must demonstrate on appeal that
the evidence establishes that issue as a matter of law.  Dow Chem. Co. v. Francis,
46 S.W.3d 237, 241 (Tex. 2001). 
We examine the record for evidence to support the adverse finding,
ignoring all evidence to the contrary. 
If there is no evidence to support the adverse finding, we examine the
entire record to determine if the contrary proposition was established as a
matter of law.  Id.  When a party attacks the factual sufficiency
of an adverse finding on an issue on which she has the burden of proof, she
must demonstrate on appeal that the adverse finding is against the great weight
and preponderance of the evidence.  Id. at 242.  We
consider and weigh all the evidence, and set aside the decision only if the
evidence is so weak or if the finding is so against the great weight and
preponderance of the evidence that it is clearly wrong and unjust.  Id.

To determine whether the court erred
in its application of discretion, we consider whether, based on the evidence in
the record, the trial court made a reasonable decision.  Lindsey, 965 S.W.2d
at 592.  We defer to the trial
court to resolve conflicts in the evidence and to determine the weight to be
given the testimony.  Bates
v. Tesar, 81 S.W.3d 411, 425 (Tex. App.--El Paso
2002, no pet.).  AThe trial court is in the best
position to observe the demeanor and personalities of the witnesses and can >feel= the forces, powers, and influences
that cannot be discerned by merely reading the record.@  Id. at 424.

Conservatorship

Cleotilde argues that the court should have
awarded her primary custody of the children because Tereso
had a history of domestic violence against her and because she had been the
primary caretaker of the children.

Relevant Evidence

In the trial court, Cleotilde made many allegations against Tereso.  For example, she and her mother stated that
he referred to Reina as Awhore@ and Israel as Ajack ass.@  
They also claimed that Tereso ran over Eden=s foot with his vehicle.








Cleotilde testified that Tereso
physically abused her throughout their marriage, but she did not pursue
criminal proceedings against him until after an incident in 1998.   Tereso pleaded
guilty to a criminal offense arising from that incident.  He testified, however, that he was not really
guilty and that he pleaded guilty on the advice of counsel.    At the time of the divorce hearings, two
criminal charges were pending against Tereso, based
on complaints of abuse by Cleotilde.  Tereso denied that
he was guilty of either of those charges.

One of Tereso=s friends testified that he got to
know Tereso while Tereso
was coaching soccer.  He testified that Tereso interacted well with his own children, the other
children that he coaches, and the other coaches.  He also testified that Tereso
is not violent or aggressive.

Tereso presented the testimony of Richard Soltero, an El Paso Police Officer to whom each party had
made complaints against the other.  He
testified that he had to Apacify@ Cleotilde about three times when
she reported that the children were in physical danger.  On each occasion, the department followed up
on her reports, but was unable to verify them. 
Although both of the Gonzalezes gave Officer Soltero difficulty, Cleotilde was
more difficult.  Among the reports made
by Cleotilde were that Tereso
bit the children, that he threatened to take all the children away from her,
and that he forced one of the children to engage in sports, resulting in
bruises on his legs.








Dr. Rodolfo Basurto
was ordered by the court to conduct preliminary psychological assessments of
the children.  He testified that the
children did not express any distress at being separated from one another.  His overall impression was that all the
children were Avery content about their life.@ 
He did not diagnose any of the children with a disorder, but he did
recommend counseling to help them cope with the divorce.

The trial judge interviewed all three
children.  The youngest child, Eden, was
seven-years-old at the time of the proceedings in the trial court.  He told the judge that his dad yelled more
than his mom.  He also said that it was Ahard@ for him to live away from his
siblings and that he missed his siblings Aa little.@

The Gonzalezes= daughter, Reina,
was fifteen at the time of the proceedings in the trial court.  She told the judge that she wanted to
continue living with her father.  She did
not like the fact that her mother would take her to the police station.  She stated that one time her mother took her
to the police because they had a fight.  Reina also stated that her mother told her bad things that
her father had done to Reina, but Reina
did not remember any of it.  Her mother
also accused her father of brainwashing all the children.

The oldest child, Israel, was
seventeen at the time of the proceedings in the trial court.   The judge allowed him some time to think
about whether he would like to live with his mother or his father and inform
her of his decision in writing or at a later hearing.  The record does not reflect whether Israel
ever informed the judge of his decision.

After interviewing the children, the
trial court appointed Esther Monty as a guardian-ad-litem
to interview the children and make recommendations regarding custody.  Monty is a licensed professional counselor
and a national domestic-violence counselor.








Monty recommended that Tereso have primary custody of Israel and Reina and that Cleotilde have
primary custody of Eden.  She stated that
putting Israel and Reina in their mother=s care would cause Aa lot of stress and they are old
enough to know what they want.@  She testified that
she asked the children to describe their lives with their mother and
father.  Israel and Reina
told her that they Ahave a very conflicting relationship with their mother.  That they argue a lot and they felt that
their father was more reasonable.@ 
She testified that Israel admitted that when he is at his mother=s house he drinks alcohol with her
friends.  Monty also expressed concern
about Eden=s academic progress.  His teacher told Monty that Eden had not been
following through with his homework. 
When Monty discussed this problem with Cleotilde,
she said, A>Well, that=s just the way he is.  And the teacher is going to have to get used
to him.=@ 
Monty recommended that Eden spend two days a week with his father in the
hope that Tereso would help Eden with the
homework.  Monty was aware of Tereso=s conviction and of the pending charges.  She believed that both parents were lacking
in parenting skills, and she recommended parenting classes for both of them.

Discussion








The Family Code provides that in
determining whether to appoint a party as a sole or joint managing conservator,
a court must consider evidence of that party=s physical abuse against his or her
spouse within two years preceding the filing of the suit.  Tex. Fam. Code Ann. ' 153.004(a) (Vernon Supp. 2004).  Furthermore, the court Amay not appoint joint managing
conservators if credible evidence is presented of a history or pattern of past
or present . . . physical . . . abuse by one parent directed against the other
parent . . . .@ 
Id. ' 153.004(b).

Tereso=s guilty plea and conviction are not
conclusive evidence that he committed physical abuse against Cleotilde.  See
St. Paul Mercury Ins. Co. v. Tri-State Cattle Feeders, Inc., 628 S.W.2d
844, 847 (Tex. App.--Amarillo), writ ref=d n.r.e., 638 S.W.2d 868 (Tex. 1982) (holding
that a guilty plea and conviction for theft were not conclusive evidence of
theft in a civil suit to obtain insurance benefits resulting from theft).  It appears that the trial court simply
determined that the evidence of abuse presented by Cleotilde
was not credible and that the court therefore discounted the testimony of Cleotilde and her mother. 
Based on the record before us, we will not interfere with this
credibility determination.  See Pena
v. Pena, 8 S.W.3d 639, 639 (Tex. 1999) (noting that a trial court is vested
with wide discretion in determining custody issues and upholding the
appointment of joint managing conservators, even though the father did not
controvert the mother=s evidence of abuse); see also Pena v. Pena, 986
S.W.2d 696, 698 (Tex. App.--Corpus Christi 1998, pet. denied).








Discounting the testimony of Cleotilde and her mother, there was ample evidence to
support giving Tereso primary custody of Israel and Reina.  In particular,
we note that the guardian-ad-litem recommended this
result, and both Israel and Reina apparently wished
to live with their father.  Cf. Tex. Fam. Code Ann.
' 153.008 (Vernon Supp. 2004)
(providing that a child who is at least twelve-years-old may designate in
writing the parent who will have primary custody, subject to the court=s approval).  Although there was evidence that Tereso was lacking in parenting skills and had unnecessarily
involved the police and the children in his disputes with Cleotilde,
that evidence is not so great as to render the trial court=s decision clearly wrong and unjust.

Siblings are not to be separated
except upon a showing of clear and compelling reasons.  In re De La Pena, 999 S.W.2d 521, 535
(Tex. App.--El Paso 1999, no pet.); see also Tex. Fam. Code Ann. ' 153.251(c) (Vernon 2002) (AIt is preferable for all children in
a family to be together during periods of possession.@). 
Therefore, because Tereso was given primary
custody of Israel and Reina, Cleotilde
must show clear and compelling reasons why Tereso
should not also be given primary custody of Eden.  Cleotilde has not
pointed to any such reasons.

We conclude that the evidence is
legally and factually sufficient to support the trial court=s decision to award primary custody
of the children to Tereso.  We also conclude that the decision was not an
abuse of discretion.

Property
Division

Cleotilde argues that the trial court erred by
awarding the thrift savings plan to the children.  Cleotilde=s counsel did not object when the
trial court orally rendered that ruling, nor did Cleotilde
file any post-judgment motions challenging the ruling.  Therefore, this issue is not preserved for
review.  See Tex. R. App. P. 33.1(a)(1).








Cleotilde also argues that the trial court
should have awarded her a disproportionate share of the marital estate because Tereso was at fault in the divorce.  

The court divided Tereso=s retirement plan equally between the
parties.  In her testimony before the
court, Cleotilde stated that she only wanted half of
the retirement plan.  The court also
awarded Cleotilde the two vehicles that were in her
possession.   Again, this is all that Cleotilde requested in her testimony.

Cleotilde requested the larger house that the
parties owned.  The court initially
announced that it would order both houses to be sold and the proceeds to be
divided equally.  When Cleotilde informed the court that she did not want the
houses to be sold, the court stated, AThen the father and the children move
into the larger home . . . .@

A trial court may consider fault in
dividing the marital estate, but is not required to do so.  Young v. Young, 609
S.W.2d 758, 762 (Tex. 1980). 
Under the circumstances we have just described, we conclude that the
court did not abuse its discretion by not awarding Cleotilde
a disproportionate share of the marital estate because of Tereso=s fault in breaking up the marriage.

Witnesses








Finally, Cleotilde
argues that the trial court erred by allowing Tereso
to call  Officer Soltero
and Dr. Basurto as witnesses because they were not
announced at the pretrial conference.  Cleotilde=s counsel objected to the testimony of these witnesses
because Tereso failed to identify them as witnesses
in his answer to Cleotilde=s interrogatories.  The trial court noted that both witnesses
were listed in a pretrial report that was signed by a judge and filed
approximately three months before the hearing.  
Cleotilde=s counsel denied knowing anything
about the pretrial report.  The court
stated that because the list was on file, it was available for counsel to
review.

A party may not offer the testimony
of a witness if the party failed to identify the witness in its initial
response to a discovery request or in a timely supplemental response, unless
the trial court finds that there was good cause for the failure or the failure
would not unfairly surprise or unfairly prejudice the other party.  See Tex.
R. Civ. P. 193.6(a).  In
this case, the trial court could have concluded that Cleotilde
was not unfairly surprised by the witnesses because the list of witnesses was
on file with the court.  Moreover, it is
clear that Cleotilde=s attorney had copies of Dr. Basurto=s report, and her cross-examination of both witnesses was
effective.  Therefore, the record does
not show that Cleotilde was unfairly prejudiced by
the witnesses= testimony.

Conclusion

For the reasons stated herein, all
the issues raised in this appeal are overruled, and the judgment of the trial
court is affirmed.

 

SUSAN
LARSEN, Justice

May 27, 2004

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

McClure, J., concurring

 








                                                      CONCURRING
OPINION

 

I write separately because of my
disagreement with the majority=s treatment of Tereso=s guilty plea and conviction of Class
A misdemeanor assault.  The opinion duly
notes the statutory directive that a trial court shall consider evidence of
physical abuse against a spouse in determining whether to appoint a parent as a
sole or joint managing conservator.  Tex.Fam. Code Ann. ' 153.004(a) (Vernon Supp. 2004).  It is quite clear from my reading of the
record that Judge Macias did indeed consider the issue.  She said so more than once, albeit not in
formal findings of fact.  More troublesome
is the short shrift given the statutory prohibition against the appointment of
joint managing conservators if credible evidence is presented of a history or
pattern of abuse.  Id. ' 153.004(b).








As any seasoned family law
practitioner knows, family violence claims are serious allegations.  Sadly, they are also frequently utilized as
leverage in contested custody disputes. 
The courts have struggled with just what constitutes Aa history or pattern of . . . abuse.@ 
Tex.Fam.Code Ann. ' 153.004(b).  The concept of physical abuse Aremains subject to wide variations
and varying interpretations.@[1] 
Pena v. Pena, 986 S.W.2d 696, 699 (Tex.App.--Corpus Christi 1998), pet. denied per curiam, 8 S.W.3d
639 (Tex. 1999) (disapproving consideration of provocation in determining the
existence of a history or pattern of domestic violence.)  Where the parties tell different versions of
a confrontation, the trial court must determine the weight and credibility of
the evidence.  Lowth
v. Lowth, No. 14-03-00061-CV,  2003 WL 22996939, at *5 (Tex.App.--Houston [14th Dist.] December
23, 2003, pet. denied) (not designated for
publication).  In so doing, it may
believe one witness and disbelieve another. 
Clark v. Funk, No. 08-97-00634-CV, 2000 WL
1203942, at *5 (Tex.App.--El Paso August 24, 2000, no
pet.) (not designated for publication).  Where there is nothing in the record to
demonstrate that the trial court did not consider the testimony of
family violence, the trial court rarely abuses its discretion in granting joint
managing conservatorship.  Jackson v. Jackson,
No. 05-01-01719-CV, 2002 WL 31513388, at *1 (Tex.App.--Dallas
November 13, 2002, no pet.) (not designated for
publication) (noting that nothing indicated trial
court did not consider wife=s testimony and concluding that her testimony did not show as
a matter of law a history or pattern of abuse).








The record before us does not contain
the judgment of conviction.  Cleotilde offered Respondent=s Exhibit 1, a computer printout of a
disposition record.  The exhibit was
excluded upon Tereso=s objection that an improper
predicate had been laid.  Cleotilde does not complain on appeal that the exhibit was
erroneously excluded.  Cleotilde then asked the trial court to take judicial
notice of the conviction.  Although Judge
Macias declined to do so, she indicated she would allow counsel the opportunity
to retrieve the judgment upon recess. 
She ruled similarly with regard to the two felony assault charges which were  pending at the
time of the trial.  Cleotilde
does not complain that insufficient time was allotted.  It simply was not done.  We are left then with Tereso=s testimony, which was elicited by Cleotilde=s own attorney:

Q:  Let me call
your attention to your plea of guilty on family violence on the incident that
occurred 12-12-98, do you remember?

 

A:  Let me
answer that.  I was not guilty.  The other lawyer told me to declare guilty.[2]  I was not guilty.

 

Q:  Sir, isn=t it a fact that you made a plea of guilty on 10-27-99
to Case 990C00749.  Yes or no?

 

A:  No,
because--

 

[Counsel] May I approach, Your Honor?

 

A:  --the other
lawyer told me to do that.

 

Q:  Mr.
Gonzalez, let me show you what has been marked Respondent=s No. 1.  See if
you recognize any of that.

 








A:  Yes, but in
my heart I didn=t do
anything.

 

.    .    .

 

Q:  But you
served probation, is that correct?

 

A:  Yes.

 

Q:  Somebody
that serves probation is because the court has found them guilty; is that
correct?

 

A:  Yes.  

 

Tereso
also stipulated to the pendency of the two felony
indictments.

 

The majority dismisses this testimony
by summarily deciding that Tereso=s guilty plea and conviction are not
conclusive evidence that he committed physical abuse against Cleotilde.  In
support of this conclusion, it references a Supreme Court opinion which held
that a guilty plea and conviction for theft were not conclusive evidence of
theft in a civil suit 
to obtain insurance benefits arising from the theft.  In that case, however, the thief was not a
party to the litigation; the litigation ensued between the policy holder/victim
and the insurance company.  Consequently,
collateral estoppel was not an issue.  Here we are presented not with merely
conflicting testimony.  We are presented
with a judicial admission of guilt.  Is that
enough?  The majority answers, Ano.@








A judicial admission that is clear
and unequivocal has conclusive effect and bars the admitting party from later
disputing the admitted fact.  Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562,
568 (Tex. 2001).  We have held
that under the doctrines of collateral estoppel and
judicial admission, an agreed judgment establishes the issue in question as a
matter of law.  Cortez
v. Liberty Mutual Fire Ins. Co., 885 S.W.2d 466, 470 (Tex.App.--El
Paso 1994, writ denied).  The same
is true of a guilty plea giving rise to a judgment of conviction.  See Johnston v. American Medical
International, 36 S.W.3d 572 (Tex.App.--Tyler
2000, pet. denied).  There, a neurologist
pled guilty to eight counts of simple assault by contact, all Class C
misdemeanors.  He later filed suit
against various doctors and medical facilities alleging a conspiracy to concoct
a scheme whereby he was falsely accused of sexual misconduct with patients so
that he would be discredited and forced to quit his practice.  The defendants sought summary judgment,
claiming that collateral estoppel arising from Dr.
Johnston=s guilty plea barred his claims.  In affirming, the appellate court noted that
a prior conviction may work a collateral estoppel in
a subsequent proceeding if the identical issues for which estoppel
is sought were litigated and directly determined in the prior criminal
proceeding.  Id. at
576.  In that event, the convicted
party is estopped from attacking the judgment or any
issue necessarily decided by the guilty plea. 
Id.,  citing
Francis v. Marshall, 841 S.W.2d 51, 54 (Tex.App.--Houston
[14th Dist.] 1992, no writ).  This means,
of course, that the convicted party may not introduce testimony to controvert a
judicial admission.  Marshall
v. Vise, 767 S.W.2d 699, 700 (Tex. 1989).  However, the party opposite must nevertheless
preserve error by objecting to the introduction of controverting
evidence.  Id.  The holding of the Supreme Court is
particularly applicable here.








In the present case, Vise failed to object to the controverting testimony on the ground that he was relying
upon Marshall=s deemed admissions. 
In fact, Vise actually elicited much of the contradictory evidence.  Vise has waived, therefore, his right to rely
upon those admissions which were controverted by
testimony admitted at trial without objection.

 

Id.

Similarly, Cleotilde
failed to object when Tereso testified that he pled
guilty to assault only because his lawyer told him to and that Ain his heart@ he knew he was not guilty.  In fact, her counsel elicited this very
testimony.  Consequently, Judge Macias was
presented with conflicting evidence and, as the fact finder,
she was required to determine the weight and credibility of the evidence.  Therefore, although I disagree with the
majority=s broad statement that Tereso=s plea of guilt and subsequent conviction are not conclusive
evidence of physical abuse, I concur because the error was not preserved.

 

ANN CRAWFORD McCLURE,
Justice

May
27, 2004

 











[1]  With an eye
toward resolving the definitional issue, the Legislature amended section
153.004 this past session.  While it
applies only to orders rendered on or after its effective date, the text and
subsequent commentaries are enlightening:

 

(f) In
determining under this section whether there is credible evidence of a history
or pattern of past or present child neglect or physical or sexual abuse by a  parent directed
against the other parent, a spouse, or a child, the court shall consider
whether a protective order was rendered under Chapter 85, Title 4, against the
parent during the two-year period preceding the filing of the suit or during
the pendency of the suit.

 

Tex.Fam.Code Ann. ' 153.004(f) (Vernon Supp. 2004), amended by 78th Leg.,  R.S., ch. 642, ' 1, 2003 Tex.
Gen. Laws 2046, 2047, eff. September 1,
2003.  Well-respected commentators have
noted:

The test
for whether there is a Acredible evidence of a history or pattern of past or
present chid neglect or physical or sexual abuse by a
parent@ previously has been left to a case-by-case
determination by the court.  The addition
of subsection (f) provides a nonexclusive test regarding whether such a history
exists.  That is, whether a protective
order was rendered against the respondent in the preceding two year
period.  Arguably, rendition of a single
protective [order] within the past two years is not necessarily proof of a Apattern,@ but it
surely is a good start on proof of a Ahistory.@

 

Sampson
& Tindall, Tex.
Fam.Code
Ann. ' 153.004, Comment, p. 556 (2003).





[2]  One would hope
that Tereso was warned of the consequences of his plea.  Under federal law, he is now precluded from
possessing any firearm or ammunition.  18
U.S.C. ' 922(g)(9) (It shall be unlawful for any person

who has been convicted in any court of a misdemeanor
crime of domestic violence to possess any firearm or ammunition).  Under Texas law, he is prohibited from
obtaining a license to carry a concealed handgun for a period of five
years.  See Tex.Gov=t Code Ann. ' 411.172(a)(8) (Vernon 1998
& Supp. 2004).