Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# MEMORANDUM OPINION

No. 04-10-00048-CV

Antonio **REYES-VIDAL**,
Appellant

v.

**COMMISSION FOR LAWYER DISCIPLINE**,
Appellee

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CI-04181
The Honorable Dan Beck, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  November 3, 2010

AFFIRMED

Appellant, Antonio Reyes-Vidal, appeals from a final judgment of disbarment.  We affirm.

## BACKGROUND

On January 29, 2003, Border Patrol agents arrested and detained Misdael Lopez-Bonilla for entering the United States without inspection.  On March 21, 2003, Lopez-Bonilla's brother Edgar, a United States resident, hired appellant to represent Lopez-Bonilla in removal

proceedings. Edgar paid appellant $750 for his initial retainer, and appellant successfully obtained reduction of Lopez-Bonilla's bond to $5000. Edgar then wired $5000 to appellant for payment of the bond, and appellant used the money to pay the bond on April 3, 2003, identifying himself as obligor. At the same time, Edgar wired appellant an additional $700: $200 for Lopez-Bonilla's post-release travel to Edgar's residence in Massachusetts, and $500 to compensate appellant for his appearance at the bond reduction hearing.

Lopez-Bonilla was immediately released from detention upon payment of the bond. Appellant testified he and his sometimes-employee Eddiberto Medina picked Lopez-Bonilla up from the San Antonio detention facility and drove him to the Greyhound station to board a bus to Massachusetts. Lopez-Bonilla, however, testified Medina was not present that day. Appellant claimed that when they arrived at the Greyhound station, Lopez-Bonilla stated he did not wish to return to San Antonio for his scheduled removal hearing and asked appellant if the hearing could be transferred to Massachusetts. Appellant testified he then handwrote a contract, which he and Lopez-Bonilla signed. Per the purported contract, appellant would attempt to have the removal hearing transferred and he would retain the $5000 bond refund as his fee for doing so. Lopez-Bonilla disputes that such a contract was ever formed or signed. The parties do agree that Lopez-Bonilla signed a handwritten receipt stating appellant gave him $200 in cash for the bus ticket to Massachusetts. However, Lopez-Bonilla testified appellant never actually gave him cash, but rather purchased the bus ticket with part of the $200 from Edgar and did not give him the balance.

Appellant successfully obtained a transfer of Lopez-Bonilla's removal hearing to Massachusetts, where another attorney represented him. The immigration court in Boston granted Lopez-Bonilla asylum. Thereafter, the $5000 bond was released to appellant as obligor.

Lopez-Bonilla and Edgar subsequently contacted appellant requesting return of the $5000 to Edgar. Edgar testified appellant told him he had mistakenly spent the $5000 and would repay it in installments over the course of three months. In contrast, appellant testified he told Edgar he would not return the money pursuant to the contract he and Lopez-Bonilla signed at the Greyhound station. This purported contract forms the basis of the current disciplinary proceeding.

On March 15, 2007, Lopez-Bonilla filed his first grievance against appellant. Appellant responded with a copy of the purported contract and alleged Lopez-Bonilla agreed he could keep the bond refund as additional compensation. Based on the contract, the first grievance was dismissed. Upon learning of the contract's alleged fabrication, the Office of Chief Disciplinary Counsel (appellee) advised Lopez-Bonilla to file a second grievance, which he did. Appellee then filed a disciplinary action against appellant in the district court.

At trial, appellant testified the contract was genuine but admitted Lopez-Bonilla's signature was forged. Medina testified that after appellant and Lopez-Bonilla signed the purported contract, appellant told Medina to take the contract and the receipt for $200 back to appellant's office to photocopy. Medina claimed that, unbeknownst to appellant, he forged Lopez-Bonilla's signature on the purported contract after accidentally getting the document wet and smudging the original signature while attempting to photocopy it. He stated he copied and pasted Lopez-Bonilla's signature from the receipt for $200 onto the contract and photocopied it to conceal the alteration because he was afraid appellant would yell at him if he admitted his mistake. Appellant asserted he did not discover the alleged forgery until after he submitted his response to the first grievance. Following a bench trial, the trial court entered a judgment of disbarment.

## LEGAL AND FACTUAL SUFFICIENCY

Appellant challenges the legal and factual sufficiency of the evidence in favor of disbarment. We review the legal and factual sufficiency of the trial court's findings in a bench trial in the same manner as the jury's findings in a jury trial. *Brown v. Comm'n for Lawyer Discipline*, 980 S.W.2d 675, 679 (Tex. App.—San Antonio 1998, no pet.). When reviewing a legal sufficiency or no-evidence challenge, we must determine whether a reasonable and fair-minded person could reach the verdict based on the evidence adduced at trial. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We view the evidence in the light most favorable to the verdict, crediting favorable evidence if a reasonable fact finder could and disregarding contrary evidence unless a reasonable fact finder could not. *Id.* When reviewing a factual sufficiency challenge, we consider and weigh all the evidence both supporting and contradicting the finding. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We will set aside the verdict only if the evidence is so weak or if the verdict is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust.[1] *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). Because this court is not the fact finder, we will not pass upon witnesses' credibility or substitute our judgment for that of the trial judge, even if the evidence would clearly support a different result. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

Here, upon appellant's request, the trial court issued findings of fact stating, in pertinent part:

> [Appellant] knowingly made one or more false statements of material fact in connection with a disciplinary matter[;] . . . falsely represented to [appellee] that

---

[1] Appellant argues the burden of proof in disciplinary proceedings should be raised from a preponderance of the evidence, as provided by Texas Rule of Disciplinary Procedure 3.08(c), to clear and convincing evidence. Authority to amend the existing rules rests exclusively with the Supreme Court of Texas, and this court is without power to change the standard as appellant requests. *See* TEX. GOV'T CODE ANN. § 81.072 (West 2005).

> [Lopez-Bonilla] had signed and agreed to the contents of [the contract;] . . . kept for himself $5000 in released-bond funds which he was not entitled to keep[; and] . . . engaged in conduct involving dishonesty, deceit or misrepresentation.

On appeal, appellant argues there is insufficient evidence to support the trial court's finding that he knowingly made a false statement of material fact when he submitted a copy of the purported contract in his response to Lopez-Bonilla's first grievance for two reasons. First, because Medina testified he forged Lopez-Bonilla's signature on the purported contract without appellant's knowledge or permission and, second, because appellant testified he was unaware of the purported forgery when he responded to the first grievance. Essentially, appellant contends the trial court erred in concluding appellant knew Lopez-Bonilla's *signature*, as opposed to the entire contract, was falsified when he replied to the first grievance. But appellant's argument focuses too narrowly on the forged signature and ignores the trial court's finding that appellant knowingly submitted a wholly fabricated document in connection with a disciplinary proceeding. Our review focuses on whether the evidence is sufficient to support the trial court's finding.

In addition to Lopez-Bonilla's testimony that there was never a contract formed or an agreement made allowing appellant to retain the $5000 bond refund, the trial court also had the following evidence to consider. Appellant's response to Lopez-Bonilla's first grievance stated Lopez-Bonilla was released from detention on April 3, 2003, he stayed the night at a boarding house in San Antonio, and he departed San Antonio on a Greyhound on April 4. In support of his response to the first grievance, appellant attached a copy of the purported contract, which was dated April 3. The contract charged Lopez-Bonilla $800 of the $5000 bond refund, in part, for his overnight stay at the boarding house. Appellant also attached a copy of the travel letter, dated April 4, which he prepared for Lopez-Bonilla in the event that Border Patrol might stop him during his travel and request immigration documents.

At trial, appellant admitted Lopez-Bonilla actually departed San Antonio on April 3, the same day he was released from detention, and he did not spend the night at the boarding house. Appellant testified the inaccuracy in his response to the grievance was the result of his lapsed memory after the passage of four years from the date of Lopez-Bonilla's release from detention (April 3, 2003) and the date of appellant's response (April 27, 2007). He claimed he assumed that because Lopez-Bonilla was released on April 3 and departed, according to the travel letter, on April 4, he must have stayed at the boarding house appellant's clients routinely used. The incorrect date on the travel letter, appellant testified, was the result of appellant's mistaken belief at the time the letter was drafted on April 3 that Lopez-Bonilla would not depart until the next day. Appellant could not explain, however, why the purported contract charged Lopez-Bonilla for his stay at the boarding house he never stayed at, even though the contract was allegedly drafted at the Greyhound station just as he was about to depart.

In contrast to appellant's testimony, Lopez-Bonilla denied that appellant ever asked to retain the $5000 bond refund. He testified he never agreed appellant could keep the money, nor would he have agreed had the issue ever come up. Lopez-Bonilla also asserted he never met Medina, who was not present when appellant picked him up from detention and drove him to the Greyhound station. Edgar testified that when he contacted appellant and requested return of his $5000, appellant told him he was unsure where the money came from when he received it and had already spent it. Edgar claimed appellant promised to repay the money within three months, but when over three months went by without a payment, appellant stopped answering Edgar's phone calls. It was only after Edgar made over twenty-five unanswered calls to appellant that Lopez-Bonilla filed his first grievance.

Because the inconsistencies between appellant's response to the first grievance and his testimony at trial tend to corroborate Lopez-Bonilla's testimony that no contract was ever created or signed, the trial court could reasonably find appellant and Medina were not credible and disregard their testimony. As this court will not substitute its own judgment for that of the trial judge on matters of witness credibility, we find the trial court's verdict not against the great weight and preponderance of the evidence. Therefore, the evidence was both legally and factually sufficient to support the trial court's verdict. We overrule appellant's issue.

## SUFFICIENCY OF THE PLEADINGS

The trial court's fourth finding of fact states: "[Appellant] kept for himself $5000 in released-bond funds which he was not entitled to keep." Appellant argues the disciplinary petition does not aver wrongful retention of the $5000 as a ground for discipline, thereby precluding disbarment on this basis. We disagree.

Appellee's petition precisely adhered to the requirements set forth in the rules of disciplinary procedure, which provide:

> The petition must contain: . . . A description of the acts and conduct that gave rise to the alleged [p]rofessional [m]isconduct in detail sufficient to give fair notice to [r]espondent of the claims made, which factual allegations may be grouped in one or more counts[; . . .] A listing of the specific rules of the Texas Disciplinary Rules of Professional Conduct allegedly violated by the acts or conduct, or other grounds for seeking [s]anctions[; and . . .] A demand for judgment that the [r]espondent be disciplined as warranted by the facts and for any other appropriate relief.

TEX. R. DISCIPLINARY PROC. 3.01(d)–(f). In a brief statement of facts, the disciplinary petition charges:

> In March of 2007, Misdael Lopez-Bonilla filed a complaint against [appellant], complaining that *[appellant] failed to return money that had been used for his bond* in the immigration case. In his response to the complaint, [appellant] provided the State Bar of Texas with a purported contract dated April 3, 2003, which supposedly had been signed by the Complainant Lopez-Bonilla and

[appellant]. This document stated that the Complainant Lopez-Bonilla agreed to allow [appellant] to keep the bond money as compensation. . . . The purported contract was a fabrication which the Complainant Lopez-Bonilla had never agreed to nor been asked to agree to.

[Emphasis added.] Next, in the section specifying which disciplinary rules were violated, the petition states:

*The factual circumstances exemplified above constitute violations of the following Texas Disciplinary Rules of Professional Conduct:* Rule 8.01(a) . . . a lawyer in connection with a disciplinary matter shall not knowingly make false statements of material fact; Rule 8.01(b) . . . a lawyer in connection with a disciplinary matter, shall not fail to correct a misapprehension known by the person to have arisen in the matter . . . Rule 8.04(a)(3) . . . A lawyer shall not engage in conduct involving dishonesty, . . . deceit or misrepresentation.

[Emphasis added.]

The language of the disciplinary petition makes it clear that appellant's wrongful retention of the $5000 bond and subsequent efforts to conceal it by fabricating the contract form the crux of the complaint. Had appellant not misappropriated the bond refund, there would be no need to fabricate a contract purporting to give appellant the right to keep it. And, had the trial court accepted the authenticity of the alleged contract, there would be no question that the $5000 was legitimately retained. Thus, the disciplinary petition adequately pleaded facts sufficient to support the trial court's judgment of disbarment on the basis that appellant wrongfully retained the $5000.

## CLERICAL ERROR

Appellant claims the judgment of disbarment is fatally flawed because of an erroneous reference to "Respondent Rosas." The original judgment, signed on December 7, 2009, was lost in the mail and replaced by a duplicate judgment signed on December 18, 2009. The original judgment contained two erroneous references to "Respondent Rosas." The second judgment was apparently corrected to omit one mention of "Respondent Rosas," but one reference to

"Respondent Rosas" remained. In pertinent part, the second judgment reads: "[T]he Court finds for each of the violations established that the proper discipline of *Respondent Rosas* is DISBARMENT. It is, therefore, ORDERED AND DECREED that[] ANTONIO REYES-VIDAL . . . is hereby immediately disbarred . . . ." [Emphasis added]. Appellant argues this erroneous reference is not merely a clerical error and, accordingly, requires reversal of the trial court's ruling. We disagree.

A clerical error is a typographical mistake that "does not result from judicial reasoning or determination." *Andrews v. Koch*, 702 S.W.2d 584, 585 (Tex. 1986). Alternatively, a judicial error "occurs in the *rendering* as opposed to the *entering* of a judgment." *Escobar v. Escobar*, 711 S.W.2d 230, 231 (Tex. 1986). In other words, a judge commits judicial error by misapplying the facts or the law to reach an erroneous verdict. A judge commits clerical error by mistakenly issuing a verdict that, because of a typographical error, does not accurately reflect the judgment actually rendered. In determining whether an error is clerical or judicial, the court of appeals must "look to the judgment actually rendered, not the judgment that should or might have been rendered." *Id.* Whether an error is clerical or judicial is a question of law, but what judgment the trial court actually rendered is a question of fact for the trial court. *Thompson v. Tex. Dep't of Human Res.*, 859 S.W.2d 482, 484 (Tex. App.—San Antonio 1993, no writ). A trial court may use the *nunc pro tunc* procedure to correct a clerical error, but it may not correct a judicial error. *Id.*

Here, there is no question of fact regarding whether the trial court actually *rendered* a judgment of disbarment against appellant. Also, there is no one named "Rosas" mentioned anywhere else in these proceedings. Appellant was correctly charged in the Original Disciplinary Petition as "Antonio Reyes-Vidal," the trial court's findings of fact refer exclusively

to "Antonio Reyes-Vidal," the caption of the trial court's final judgment lists "Antonio Reyes-Vidal" as the sole respondent, and the final judgment orders "Antonio Reyes-Vidal" immediately disbarred. Based on these facts, there is no question that appellant and no one else was disbarred, and the erroneous reference to "Respondent Rosas" in the findings portion of the judgment was nothing more than a mere clerical error. Therefore, the trial court was authorized to correct the error using the *nunc pro tunc* procedure, which it did on August 25, 2010.

## CONCLUSION

We overrule appellant's issues on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Justice