

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00425-CV

_____

C.C., Appellant

V.

L.C., Appellee

On Appeal from the 325th District Court
Tarrant County, Texas
Trial Court No. 325-609938-16

Before Pittman, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

In the divorce action below, the trial court appointed Appellee L.C. (Mother) and Appellant C.C. (Father) as joint managing conservators of their two children and gave Mother the right to exercise specific parenting decisions, including the exclusive right to determine the children's primary residence. Father argues on appeal that an act of violence committed by Mother against him disqualifies her from being one of the children's joint managing conservators and from even being given access to or unsupervised visits with the children. There is no dispute the act occurred. Instead, our question is a legal one that turns on whether a provision of the family code deprives the trial court of the discretion to appoint Mother as a joint managing conservator because she committed this single act. We hold that it does not. We affirm the judgment of the trial court.

## I. Factual and procedural background

Father described Mother's parenting skills and his relationship with her as once being a nine out of ten. Before the climactic event that ended the marriage, Father never raised an issue with Mother's parenting.

But the once-good marriage began to fall apart. Several stresses caused Mother's and Father's relationship to deteriorate: Father's work on the night shift, the time he spent while at home working on his music production business, the care that Father needed during a prolonged illness, Mother's responsibility for all the childcare

and household duties, and Father's alleged use of marijuana in the home. Mother also suspected Father of infidelity.

The incident that was the primary focus of the bench trial and is the pivot point of this appeal began with Mother's decision to go without Father to visit her family in Mississippi and to take the children with her. Shortly after she arrived for the visit, another family member convinced her to return home to work on her marriage. She returned home but left the children in Mississippi. Father's trial counsel suggested that Mother timed her early morning return to the family home as an attempt to determine whether Father was being unfaithful.

Mother's return began a day of conflict. The conflict focused on Father's cell phone. Mother insisted that the phone contained evidence of his contact with another woman, but Father attempted to frustrate her ability to look for what she believed was incriminating. The day progressed with Mother and Father hiding the phone from each other and removing, reinstalling, and then disabling the app that allegedly contained the communications that Mother wanted to see.

Mother claimed that Father bruised her arms while they argued. Father denied that he did.

It is uncontroverted that Mother introduced a gun into the argument. The following account came in response to the question directed to Mother, "So at some point you came out with a gun, right?" Mother's response was that she decided to leave the house and went into the couple's bedroom to dress. While dressing, she

3

*saw the gun and . . . got the gun and . . . thought, well, if I -- maybe if I go in the room[,] then maybe he'll -- he'll take me serious that I need to see the phone* so I can know what to do with my future. Because he's basically -- this time I have actually proof that he's doing this to me[,] and he's manipulating me. Because he's also saying to me during this time, ["]Don't you think maybe you are just being insecure?["] So he's basically putting it on me that what I saw wasn't real. [Emphasis added.]

Holding the gun, Mother walked into the room where Father was and asked him to give her his phone. Mother and Father walked through the house with Mother carrying the gun "down to [her] side." Father claimed at trial that Mother pointed the gun at him, but Mother denied doing so.

Pointed or not, the inevitable occurred when a gun is introduced into a quarrel. Father grabbed for the gun. It went off. Father was shot through the leg, and Mother was grazed in the arm. This ended any hope of reconciliation.

Mother was arrested on a felony charge of aggravated assault with a deadly weapon but was released from jail the next day after posting bond. She eventually pleaded guilty to one misdemeanor count of deadly conduct and was placed on probation.

Father filed for divorce shortly after the shooting. A year stretched between the filing and the bench trial.

During that period, numerous conflicts arose: (1) Father obtained a protective order that Mother claimed he used to keep her from the family house and to push her and the children to the edge of homelessness; (2) Father sought a writ to obtain the return of the children; (3) Mother claimed that Father attempted to alienate the

4

children's affections from her and frustrated her attempts to maintain contact with them; (4) Mother claimed that Father had failed to comply with court orders to provide her funds, and Father claimed that Mother's actions forced him into such dire financial straits that he had to decide whether to pay Mother or to provide for the children; and (5) the parties engaged each other in hearings on temporary orders, hearings on motions to modify temporary orders, and a motion for contempt.

Specifically focusing on what the parents told the trial court about their relationship with the children, Father and Mother could agree on little at the bench trial. After being released from the hospital and filing for divorce, Father sought a writ of possession and entered into a rule 11 agreement to obtain the return of the children from Mississippi. As a result of the contested temporary orders hearing, the trial court appointed Father as temporary sole managing conservator of the children and gave Mother supervised visitation. Mother then sought to modify the temporary orders by claiming that Father was not abiding by them, and the trial court removed the supervision provision from Mother's visitation with the children.

The trial court heard each party's side of the story about how they had treated the children and each other during the pendency of the divorce. Mother claimed that Father had frustrated her phone access to and physical visitations with the children; Father offered justifications for what had occurred. Father accused Mother of not helping with the children's financial needs. She charged him with not paying required spousal support and other monies that he was ordered to pay; he claimed that he

5

lacked the ability to do so because of the expenses he bore to take care of the children. Father attacked Mother for not visiting the children; Mother claimed that Father's failure to make the payments hampered her ability to travel to visit the children. Each parent accused the other of being the greater offender in failing to abide by or take advantage of the trial court's orders and challenged whether the other would abide by future orders that the trial court might enter.

Both parents asked to be the children's primary caregiver and challenged the other's parenting abilities and commitment.

Father described his devotion to and history of care of the children after the shooting incident. Mother contested his depiction based on his work schedule. The testimony noted financial difficulties Father was experiencing.

Father claimed that though once a good parent, Mother had become uninvolved in the children's lives and had not been supportive of them. She charged that Father had "tampered" with her relationship with the children and that his actions were part of an ongoing effort to alienate the children from her. Mother offered an example of not being provided pictures of the children.

At the time of the bench trial in January 2018, Mother was living in Atlanta with her income coming from part-time employment in a library and a YouTube channel. But Mother also emphasized that her situation had improved and that she was now able to care for the children's financial needs. The trial court wanted to know whether Mother was planning to return to the local area. Mother testified that

6

she had moved out of state because she lacked a local support system. But Mother promised that she would return if that was what she needed to do to take care of her children:

> I have never been in any trouble before, so I had to go where I could, you know, have some -- I don't have any family here. He does but I don't. So it made it extremely hard for me. So I can come back. I won't have a support system here, though. So I'm stronger now. So, yeah, I can give thought to it. I can apply for jobs here and see if I can do something here instead of there. My support system is there, but I'll do whatever I need to do as it pertains to my children.

After hearing of how Father was shot and the various conflicts between the parties, the trial court expressed its concern about the parenting situation that existed. The trial court also stated, "I don't like the distance between the parties. I don't want the children growing up without both their parents, so I'm going to have to think long and hard about that." The trial court ultimately signed a decree that appointed both Father and Mother as joint managing conservators of the two children. The decree also allocated the powers of the conservatorship in various ways, giving Mother the exclusive right to determine their primary residence. Many of the parenting rights and support obligations allocated between Mother and Father in the decree, including that right, were conditioned on Mother's return to Tarrant County by June 1, 2018.

A dispute later arose whether Mother had returned to Tarrant County by the June 1 deadline, and she filed a petition for a writ of habeas corpus to obtain possession of the children when Father refused to deliver them to her. The trial court conducted a hearing on the petition, orally granted it, and subsequently entered a

written order requiring Father to deliver the children to Mother. One of Father's issues in this appeal challenges the trial court's determination that Mother had returned to Tarrant County by the deadline established by the trial court.

But the central focus of this appeal is the various findings of fact and conclusions of law that relate to the allocation of parenting decisions between Father and Mother as joint managing conservators. Father focuses on the following findings:

> 5. It is in the best interest of the children that [Father] and [Mother] be appointed joint managing conservators of the children.
>
> . . . .
>
> 8. [Mother] does not have a history or pattern of committing family violence or physical abuse during the two years preceding the date of filing of this suit or during the pendency of this suit.
>
> 9. It is in the best interest of the children that [Mother] be appointed the managing conservator who has the exclusive right to designate the primary residence of the children.
>
> 10. It is in the best interest of the children that [Mother] be appointed the managing conservator who has the exclusive right to consent to medical, dental, and surgical treatment involving invasive procedures for the children.
>
> 11. It is in the best interest of the children that [Mother] be appointed the managing conservator who has the exclusive right to consent to psychological and psychiatric treatment of the children.
>
> 12. It is in the best interest of the children that [Mother] be appointed the managing conservator who has the exclusive right to make decisions concerning the children's education.
>
> 13. It is in the best interest of the children that [Mother] be appointed the managing conservator who has the exclusive right to

8

designate the primary doctor, dentist, orthodontist, and other such care providers for the children.

He also challenges the following conclusions of law:

5. [Mother and Father] should be named joint managing conservators of [the children].

6. Appointing [Mother] as a joint managing conservator does not violate [s]ection 153.004 of the Texas Family Code.

## II. The trial court's discretion to appoint as a joint managing conservator a parent who has committed an act of violence or abuse

Texas law presumes that both parents should be in their children's lives, and the provisions of the family code embody that presumption. But the family code withdraws that presumption when there is evidence of a history or pattern of violence or abuse within the family. Courts have struggled to interpret the provisions that govern how abuse or violence within a family impacts joint managing conservatorship, and we will inventory this multi-decade raft of divergent opinions. But the fundamental interpretive problem that we must resolve is whether to read a specific provision of the family code to mean that the single incident in this case constitutes a "history or pattern" of abuse or violence that disables the trial court from exercising the discretion to appoint Mother as a joint managing conservator and to vest her with other powers of managing conservatorship. We hold that a single incident does not mandate a finding of a history of abuse.

9

## A. Standard of Review

The guiding light in making determinations of custody is the best interests of the children.[1] The trial court is vested with broad discretion in making a custody determination, though that discretion ends at the point when a trial court fails to properly analyze or apply the law.

Further, in applying the abuse-of-discretion standard, "legal and factual insufficiency are not independent grounds for asserting error but are merely relevant factors in assessing whether a trial court abused its discretion." *In re M.L.*, No. 02-15-00258-CV, 2016 WL 3655190, at *3 (Tex. App.—Fort Worth July 7, 2016, no pet.) (mem. op.). "Thus, in applying the abuse[-]of[-]discretion standard, we use a two-

---

[1]As stated in *Baker v. Baker*,

> The best interests of the children must always be the primary consideration when determining issues of conservatorship. *See* Tex. Fam. Code [Ann.] § 153.002. The trial court is afforded great discretion when making such determinations, and we review the trial court's decision for an abuse of that discretion. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Because the trial court has no discretion when determining the applicable law, the trial court also abuses its discretion when it fails to analyze the law correctly and apply it to the facts of the case. *See Bradford v. Pappillion*, 207 S.W.3d 841, 844 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

469 S.W.3d 269, 273 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

pronged analysis: whether the trial court had sufficient evidence upon which to exercise its discretion and whether the trial court erred in applying its discretion." *Id.*

Much of the work in this opinion, however, involves statutory construction. That task involves a question of law, and we apply a de novo standard of review. *Colo. Cty. v. Staff*, 510 S.W.3d 435, 444 (Tex. 2017).

## B. Applicable Family Code Provisions

### 1. The family code presumes that parents should be appointed joint managing conservators, but that presumption is removed upon the finding of a history of family violence.

Barring findings that the appointment would not be in the best interest of the child, the family code provides that both parents "shall" be appointed joint managing conservators. Tex. Fam. Code Ann. § 153.131(a). That provision begins with a phrase making it subject to section 153.004, and that section addresses how the presence of a history of domestic violence alters the mandate to appoint parents as joint managing conservators.[2] And after providing that both parents shall be appointed joint managing conservators unless it is not in the children's best interest,

---

[2]Section 153.131(a) states,

*Subject to the prohibition in Section 153.004* [titled History of Domestic Violence or Sexual Abuse], unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child.

*Id.* (emphasis added).

11

section 153.131 then states that there is a "rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child." *Id.* § 153.131(b). But a finding of "a history of family violence" removes that presumption. *Id.*

**2. Section 153.004 of the family code instructs the trial court how to integrate evidence of violence or abuse into its decisions about conservatorship, visitation, and access.**

Section 153.004 gives trial courts specific direction in determining how abuse or violence impacts various conservatorship decisions. *Id.* § 153.004. In places, it instructs the trial court to consider evidence of specific types of conduct in making its decisions and in others, it prohibits actions if evidence is presented that meets certain standards. *Compare id.* § 153.004(a), *with id.* § 153.004(b). Some provisions of the section direct the trial court to consider isolated incidents of conduct, while others direct the trial court to make its decisions based on whether a history or pattern of conduct exists. *Compare id.* § 153.004(b), (d–1), (e), *with id.* § 153.004(c). The section is also not consistent in its description of the conduct that impacts the trial court's decisions, with various sections defining the conduct that the trial court must consider in divergent terms. *Compare id.* § 153.004(a), *and id.* § 153.004(b), *with id.* § 153.004(d–1), (e). Because a part of our analysis revolves around the construction of the section as a whole, we will summarize the various determinations of conservatorship and access by a parent that the section governs and the various standards that the section

12

instructs the trial court to use in making those determinations when there is evidence of abuse or violence.

> **a. A trial court may appoint a parent as a joint managing conservator when there is evidence of the intentional use of abusive force in the two years preceding the suit but must consider evidence of that act in making its determination.**

To determine whether a person may be appointed as sole managing conservator or as a joint managing conservator,

> the court shall *consider* evidence of *the intentional use of abusive physical force*, or evidence of sexual abuse, by a party directed against the party's spouse, a parent of the child, or any person younger than 18 years of age committed within a two-year period preceding the filing of the suit or during the pendency of the suit.

*Id.* § 153.004(a) (emphasis added).

> **b. A trial court may not appoint both parents as joint managing conservators when presented with credible evidence of a history or pattern of physical abuse by one parent toward another.**

The next subsection contains a provision in play in this appeal that prohibits the appointment of a parent as a joint managing conservator "if credible evidence is presented of a history or pattern of past or present . . . physical . . . abuse by one parent directed against the other parent [or] a spouse ." *Id.* § 153.004(b).

> **c. A trial court may appoint a parent who has a history or pattern of physical abuse directed against another parent as the sole managing conservator or as the conservator who has the exclusive right to determine the child's primary residence.**

Though credible evidence of a history or pattern of abuse is a bar to the appointment of joint managing conservators, the subsection containing that bar

13

makes a history or pattern of physical abuse only a rebuttable presumption against the appointment of the offending parent as the sole managing conservator or as the conservator who has the exclusive right to determine the child's primary residence:

> It is a rebuttable presumption that the appointment of a parent as the sole managing conservator of a child or as the conservator who has the exclusive right to determine the primary residence of a child is not in the best interest of the child if credible evidence is presented of a history or pattern of past or present . . . physical . . . abuse by that parent directed against the other parent [or] a spouse . . . .

*Id.*

> **d. In deciding issues of possessory conservatorship, the trial court is not to consider a history or pattern but only the commission of family violence.**

Section 153.004 next provides guidance in how the trial court should consider family violence in deciding issues of possessory conservatorship: "The court shall consider the commission of family violence . . . in determining whether to deny, restrict, or limit the possession of a child by a parent who is appointed as a possessory conservator." *Id.* § 153.004(c).

> **e. A trial court should generally deny access to a child by a parent with a history or pattern of family violence, but section 153.004 also provides a means for the trial court to permit that access even when a history or pattern of abuse is shown.**

Next, section 153.004 instructs how family violence should impact the decision of allowing access to a child:

> (d) The court may not allow a parent to have access to a child for whom it is shown by a preponderance of the evidence that:

14

(1) there is a history or pattern of committing family violence during the two years preceding the date of the filing of the suit or during the pendency of the suit . . . .

*Id.* § 153.004(d)(1).

The next subsection provides that the trial court may make findings that allow a parent denied access by the just-quoted subsection to nevertheless have access:

(d–1) Notwithstanding Subsection (d), the court may allow a parent to have access to a child if the court:

(1) finds that awarding the parent access to the child would not endanger the child's physical health or emotional welfare and would be in the best interest of the child; and

(2) renders a possession order that is designed to protect the safety and well-being of the child and any other person who has been a victim of family violence committed by the parent and that may include a requirement that:

(A) the periods of access be continuously supervised by an entity or person chosen by the court;

(B) the exchange of possession of the child occur in a protective setting;

(C) the parent abstain from the consumption of alcohol or a controlled substance, as defined by Chapter 481, Health and Safety Code, within 12 hours prior to or during the period of access to the child; or

(D) the parent attend and complete a battering intervention and prevention program as provided by Article 42.141, Code of Criminal Procedure, or, if such a program is not available, complete a course of treatment under Section 153.010.

*Id.* § 153.004(d–1).

15

**f. A trial court may permit a parent with a history or pattern of physical abuse to have unsupervised visitation, but that history or pattern creates a rebuttable presumption that the visitation is not in the child's best interest.**

For the final level of parental access, section 153.004 instructs the trial court regarding how to consider abuse in making a decision with respect to visitation:

> (e) It is a rebuttable presumption that it is not in the best interest of a child for a parent to have unsupervised visitation with the child if credible evidence is presented of a history or pattern of past or present child neglect or abuse or family violence by:
>
> (1) that parent[.]

*Id.* § 153.004(e).

### 3. Definitions for Various Terms in Section 153.004

As can be seen from the quotation of the various subsections, the descriptions of the conduct that the trial court should consider vary from intentional use of abusive physical force to physical abuse to family violence. For conduct that is directed toward a spouse or other parent, only the term "family violence" has a statutory definition, and the specific portion of the definition that concerns this appeal is as follows:

> an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself[.]

16

*Id.* § 71.004(1); *see also id.* § 153.004(g)(2) (stating that section 71.004's definition of "family violence" applies to section 153.004).

Various subsections also refer to "physical abuse," and this court, following the instruction of the Code Construction Act to use the term's common usage, defined that term to mean:

> "Physical" means "of or relating to the body." Webster's Third New International Dictionary 1706 (2002). "Abuse" means "physically harmful treatment." *Id.* at 8. Defined another way, "abuse" means "[c]ruel or violent treatment of someone, specif., physical . . . maltreatment, often resulting in . . . physical injury." Black's Law Dictionary at 12.

*In re J.M.*, No. 02-16-00428-CV, 2017 WL 3821863, at *4 (Tex. App.—Fort Worth Aug. 31, 2017, no pet.) (mem. op.) (citing Tex. Gov't Code Ann. § 311.011(a)); *cf. Baker*, 469 S.W.3d at 274 ("Based on the broad meanings of both terms, we conclude that an act by one spouse that is intended to result in bodily injury to the other spouse, and actually results in bodily injury to the other spouse, qualifies as both family violence and physical abuse.").[3]

---

[3]Section 153.004 also imports a definition of "abuse" from section 261.001(1) of the family code. Tex. Fam. Code Ann. §§ 153.004(g)(1), 261.001(1). That statutory definition involves acts or omissions directed "to the child" and is not applicable to the question of abuse between spouses or parents. To the extent that the definition may be applicable to our facts, we note that it includes both a physical injury but also "the genuine threat of substantial harm from physical injury to the child." *Id.* § 261.001(1)(C).

17

### 4. The Contorted History of the Interpretations of the Word "History"

In section 153.004, many of the decisions a trial court makes in determining parenting responsibilities are predicated on the existence of a history or pattern of abuse. The central point of Father's appeal is that Mother's act of bringing a gun into the dispute constitutes a history that disqualified her from being a joint managing conservator. Thus, Father's argument forces us to confront the question of whether a single event constitutes a history and thus invokes section 153.004(b)'s prohibition against the appointment of a parent as a joint managing conservator when credible evidence is presented of a history or pattern of physical abuse.

The phrase "history or pattern" has given the courts interpretive fits because the two primary words of the phrase are connected disjunctively. The problem the disjunctive creates is that the definition of "pattern" assumes more than one incident. The use of the disjunctive suggests to some that the word "history" has a different meaning than "pattern," and the implication is that if a pattern requires more than one event to establish, then a history may be shown with only a single event. Scott A. Young, *A Presumption for Supervised Visitation in Texas: Understanding and Strengthening Family Code Section 153.004(e)*, 37 Tex. Tech L. Rev. 327, 336 (2005) ("Judge Hathaway argues that one incident of violence is a history, while two or more constitute a pattern. He supports this view by arguing that otherwise, judges treat the words as synonyms, rendering one superfluous." (footnotes omitted)).

More than twenty years of caselaw is inconsistent in its interpretations of the phrase "history or pattern" in general and the word "history" in specific. The cases diverge in their holdings on whether a single incident can constitute a history.

In 1997, the Austin Court of Appeals relied on the ordinary meaning of the words at play to conclude that a limited number of events was not sufficient to conclusively establish a history or pattern necessary to bar the appointment of the allegedly abusive parent as a joint managing conservator under section 153.004(b). *See Long v. Long*, No. 03-97-00073-CV, 1997 WL 722704, at *2 (Tex. App.—Austin Nov. 20, 1997, no pet.).

The next year, the Corpus Christi Court of Appeals reached a similar conclusion with a more enhanced rationale. *See Pena v. Pena*, 986 S.W.2d 696, 698–99 (Tex. App.—Corpus Christi 1998), *pet. denied*, 8 S.W.3d 639 (Tex. 1999). *Pena* also involved the question of whether an allegedly abusive spouse could be appointed as a joint managing conservator of the couple's children. *Id.* at 698. The parent challenging the appointment of the other parent as a joint managing conservator testified to several instances of physical abuse. *Id.* These multiple instances did not, in *Pena*'s view, establish a history or pattern. *Id.* at 699. Looking to other statutes, such as the Racketeer Influenced and Corrupt Organizations Act and the Civil Rights Act, *Pena* held that "similar phrases in other statutes prohibiting a 'pattern of racketeering activity' have been interpreted to require more than merely repeated instances of the prohibited conduct, but must include some relationship among the

separate instances that tends to connect them and to show a threat of continuing violations." *Id. Pena* held that no history or pattern existed under its facts because the incidents did not rise to the level of a pattern. *Id.*[4]

Initially, the courts of appeals appeared to follow *Pena*'s lead in holding that a single incident did not justify a finding that a history or pattern existed. *See Lowth v. Lowth*, No. 14-03-00061-CV, 2003 WL 22996939, at *5–6 (Tex. App.—Houston [14th Dist.] Dec. 23, 2003, pet. denied) (mem. op.) (concluding that although family therapist had witnessed one "looming" incident in his office and testified that mother had described two pushing incidents and one incident in which father had threatened her, these acts did not constitute enough credible evidence to prove a history or pattern of past or present physical abuse; thus, the trial court was not bound by the prohibition found in section 153.004 from appointing joint managing conservators); *Danklefs v. Danklefs*, No. 04-01-00849-CV, 2003 WL 21796380, at *2 (Tex. App.—San Antonio, Aug. 6, 2003, pet. denied) (mem. op.) (holding that trial court did not abuse its discretion by appointing joint managing conservators because "no evidence was presented that credibly indicated even one instance of physical abuse, much less a history or pattern"); *Jackson v. Jackson*, No. 05-01-01719-CV, 2002 WL 31513388, at *1 (Tex. App.—Dallas Nov. 13, 2002, no pet.) (concluding that although the record contained multiple allegations of abuse, mother's testimony did not "show as a matter

---

[4]The supreme court denied the petition for review in *Pena* but expressed its displeasure at the court of appeals's suggestion that it is proper to consider whether the abusive behavior was provoked. *Pena*, 8 S.W.3d at 639.

20

of law a 'history or pattern of past or present child neglect, or physical or sexual abuse' by [father] such that the trial court would have been statutorily prohibited from granting joint managing conservatorship'").

The Amarillo Court of Appeals then shifted the flow and adopted an interpretation suggesting that one event can constitute a history. *In re Marriage of Stein* adopted a plain-meaning approach to interpretation and looked to the dictionary definition of "history" as "'events that form the subject matter of a history' or 'events of the past.'" 153 S.W.3d 485, 489 (Tex. App.—Amarillo 2004, no pet.). "From that definition[, *Stein* deduced] that, although a single act of violence or abuse may not constitute a pattern, it can amount to a history of physical abuse." *Id.* *Stein* buttressed this conclusion by noting a phrase within section 153.004(b)—providing that "a history of sexual abuse includes a sexual assault that results in the other parent becoming pregnant with the child"—and by concluding that because this phrase refenced a single incident, it supported the conclusion that a single incident could constitute a history. *Id.* *Stein* held that because there was an incident that formed a history of abuse, the trial court abused its discretion by appointing both parents as joint managing conservators. *Id.*

*Stein* has become a bellwether for the proposition that one instance of abuse *can* support the existence of a history of abuse. Numerous cases, including cases from this court, cite *Stein* for that proposition or rely on cases that cite *Stein*.[5]

---

[5]*See In re V.S.*, No. 02-18-00195-CV, 2018 WL 6219441, at *8 (Tex. App.—Fort Worth Nov. 29, 2018, no pet.) (mem. op.) (stating that single incident can constitute history of physical abuse "[a]nd because the statute absolutely prohibits joint managing conservatorship under these facts, the trial court did not abuse its discretion by determining that Father and Mother could not be appointed as V.S.'s joint managing conservators"); *In re E.B.*, No. 12-17-00214-CV, 2017 WL 4675109, at *5 (Tex. App.—Tyler Oct. 18, 2017, orig. proceeding [mand. denied]) (mem. op.) ("Moreover, a history of family violence can be established by a single incident."); *J.M.*, 2017 WL 3821863, at *4 ("The family code does not define 'history,' but a single act of violence or abuse suffices to show a history of physical abuse."); *In re K.L.M.*, No. 05-16-01098-CV, 2017 WL 836850, at *6 (Tex. App.—Dallas Mar. 3, 2017, no pet.) (mem. op.) ("A single act of violence or abuse can constitute a 'history' of physical abuse."); *In re L.B.*, No. 07-15-00175-CV, 2015 WL 9591953, at *1 (Tex. App.—Amarillo Dec. 31, 2015, no pet.) (mem. op.) (citing *Stein* for proposition that "a single act of violence or abuse may not constitute a pattern, [but] it can amount to a history of physical abuse" and holding that trial court abused its discretion by appointing parent with history of family violence as joint managing conservator); *In re L.A.F.*, No. 05-12-00141-CV, 2015 WL 4099760, at *6 (Tex. App.—Dallas July 7, 2015, pet. denied) (mem. op.) ("A single act of violence or abuse can constitute a 'history' of physical abuse for purposes of section 153.004 of the Texas Family Code."); *Baker*, 469 S.W.3d at 274 (stating that section 153.004(b) indicates that a history can be established by just a single incident and quoting the language of section 153.004(b), which states that "[a] history of sexual abuse includes *a* sexual assault") (emphasis added); *In re Marriage of Justice*, No. 12-13-00171-CV, 2014 WL 5499515, at *2 (Tex. App.—Tyler Oct. 30, 2014, no pet.) (mem. op.) ("One incident of physical violence can constitute a history of physical abuse."); *In re L.C.L.*, 396 S.W.3d 712, 717 (Tex. App.—Dallas 2013, no pet.) ("A single act of violence or abuse can constitute a 'history' of physical abuse for purposes of section 153.004 of the Texas Family Code."); *In re R.T.K.*, 324 S.W.3d 896, 903 n.3 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (op. on reh'g) ("A single act of violence or abuse can constitute a 'history' of physical abuse for purposes of section 153.004(b)."); *In re M.M.M.*, 307 S.W.3d 846, 853 (Tex. App.—Fort Worth 2010, no pet.) (stating that "a single act of violence may constitute a 'history' of abuse under section 153.004"); *In re J.N.*, No. 05-08-01563-CV, 2009 WL 3353629, at *2 (Tex. App.—Dallas Oct. 20,

But other courts of appeals have rejected the implication that might be drawn from the *Stein* line of cases that a single incident of abuse automatically constitutes a history of physical abuse and deprives a trial court of the discretion to appoint a parent who has committed that single incident as a joint managing conservator. The Dallas Court of Appeals dealt with a situation in which it reviewed the trial court's comments and stated that "while the trial court perhaps believed an incident [committed by the mother] occurred, it did not find credible evidence of a 'history' of family violence." *In re T.G.*, No. 05-12-00460-CV, 2013 WL 3154975, at *8 (Tex. App.—Dallas June 19, 2013, no pet.) (mem. op.). The Dallas court rejected the argument that the single incident prohibited the appointment of the mother as a joint managing conservator because the court did not view the language of the family code as creating a hard-and-fast rule that a single incident automatically translated into a history:

> We acknowledge this Court and other courts of appeals have stated that one incident can constitute a "history of physical abuse." *See Alexander [v. Rogers]*, 247 S.W.3d [757,] 762 [(Tex. App.—Dallas 2008, no pet.)]; [*R.T.H.*], 175 S.W.3d [at 521]; [*Stein*], 153 S.W.3d at 489. But, we have

2009, no pet.) (mem. op.) ("One incident of physical violence can constitute a history of physical abuse."); *Avalos v. Avalos*, No. 02-08-00012-CV, 2008 WL 5115300, at *2 (Tex. App.—Fort Worth Dec. 4, 2008, no pet.) (mem. op.) ("One incident of physical violence can constitute a history of physical abuse."); *Dewalt v. Dewalt*, No. 14-06-00938-CV, 2008 WL 1747481, at *4 (Tex. App.—Houston [14th Dist.] Apr. 17, 2008, no pet.) (mem. op.) (citing *Stein* to hold that "even a single act of violence can amount to a history of physical abuse"); *In re R.T.H.*, 175 S.W.3d 519, 521 (Tex. App.—Fort Worth 2005, no pet.) (citing *Stein* in dicta for the proposition that "[a] single act of violence or abuse can constitute a 'history' of physical abuse for purposes of section 153.004(b)").

never concluded one incident must always constitute a "history of physical abuse[,]" and to the extent any other court suggests that it must, we disagree. Had the [*l*]egislature intended that one act would forever bar two parents from jointly managing their child, it could have said so.

*Id.*

Another group of cases has not confronted the single-incident rule head on as *T.G.* did but has found other ways to vest the trial court with discretion to appoint a parent who has an incident of abuse in the past as a joint managing conservator. The Dallas Court of Appeals took this approach in *Alexander.* *Alexander* acknowledged the holdings that a single incident of abuse can constitute a history but found that a combination of the explanation of the event and the passage of time permitted the factfinder to weigh whether the incident should disable the parent from being a joint managing conservator:

> One incident of physical violence can constitute a history of physical abuse. [*R.T.H.*], 175 S.W.3d [at 521]; [*Stein*], 153 S.W.3d [at 489]. Accordingly, Rogers's admitted shoving of Shelby could support a finding of a history of physical abuse by Rogers against a spouse. *However, the jury could also consider Rogers's explanation for the conduct and the amount of time that had passed since the conduct in determining the weight to be given to the evidence. See Stucki v. Stucki*, 222 S.W.3d 116, 124 (Tex. App.—Tyler 2006, no pet.) (considering circumstances of incident in determining whether evidence of family violence was sufficient to rebut statutory presumption parents should be named joint managing conservators).

247 S.W.3d at 762–63 (emphasis added).

The Fourteenth Court of Appeals relied on *Alexander* to hold that mitigating circumstances and the passage of time allowed a factfinder to determine that a single incident does not necessarily constitute a history:

Connie testified regarding several incidents when she claimed Cliff subjected her to physical violence during their marriage. But Cliff disputed her testimony and denied Connie's allegations. Connie also contends uncontroverted evidence of Cliff's domestic abuse exists in the form of a 2006 assault charge to which Cliff pleaded "no contest" to pushing Connie, and protective orders relating to the 2006 incident as well as a separate 2014 incident. *Although a single incident of physical violence could constitute a history of physical abuse, the [factfinder] could also consider Cliff's explanation of what occurred and the amount of time that passed since the event in weighing whether a history of abuse was shown. See [Alexander], 247 S.W.3d [at 762–64].*

*In re Marriage of Harrison*, 557 S.W.3d 99, 128 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (op. on reh'g) (emphasis added).

Another opinion from the Fourteenth Court of Appeals relied on *Alexander* to hold that the determination of what constitutes a history or pattern falls within the discretion of the trial court in deciding whether to appoint an allegedly abusive parent a joint managing conservator:

> Even if Brittany's guilty plea and/or entry of the protective order is evidence of "physical abuse" on that occasion, Roberto does not cite any authority holding that one such incident constitutes a "history" or "pattern" of abuse as a matter of law. *In fact, Roberto acknowledges in his appellate brief that section 153.004 "does not define 'history' or 'pattern,' so courts use a factual analysis, considering both the number and kinds of acts involved when determining whether an appointment of JMC is barred."*

*Hinojosa v. Hinojosa*, No. 14-11-00989-CV, 2013 WL 1437718, at *4 (Tex. App.—Houston [14th Dist.] Apr. 9, 2013, no pet.) (mem. op.) (emphasis added) (citing *Alexander*, 247 S.W.3d at 762–64); *see also In re C.E.M.-K.*, 341 S.W.3d 68, 82–84 (Tex. App.—San Antonio 2011, pet. denied) (looking to the explanation of the incident and the conduct after the incident and holding that "[a]lthough a single act of violence can

constitute a 'history' of physical abuse for purposes of section 153.004(b), . . . [former stepfather's] actions in this case are not the sort that would preclude his appointment as managing conservator").

## C. Analysis

Father cites us only to *Stein* and our opinion in *J.M.* The citation leaves the impression of a consensus that a single incident automatically constitutes a "history." To the contrary, the holdings traced above highlight the disagreement among the courts of appeals as to what constitutes a "history" that prohibits the appointment of joint managing conservators. And we do not read even the cases that hold a single incident "can" constitute a history—*Stein* and its progeny—as holding that a single incident must always constitute a history. With respect to the courts whose holdings we have cited, none of them analyze the language of section 153.004 in depth. Our examination of the section's language does not convince us that a mandate exists that a single incident necessarily constitutes a history.

### 1. We do not read section 153.004(b) as mandating that a single incident of abuse must constitute a history of abuse.

We do not interpret section 153.004(b) to mean that a single incident of physical abuse is automatically a history. Instead, the statute leaves it to the trial

court's broad discretion to decide whether the act reaches the threshold of being a history.[6]

## 2. Reading section 153.004(b) to mandate that a single incident constitutes a history creates a conflict with other subsections of the statute.

We look to several of the signposts of statutory construction to conclude that one incident does not necessarily translate into a history. First, we conclude that imposing that interpretation on the word "history" in subsection (b) renders subsection (a) of the statute meaningless. Such a reading violates the principle that

> [w]e consider the statute as a whole, rather [than] viewing individual provisions in isolation, and presume the [*l*]egislature selected the statute's language with care, choosing each word for a purpose and purposefully omitting words not chosen. We must avoid adopting an interpretation that "renders any part of the statute meaningless."

*City of Dallas v. TCI W. End, Inc.*, 463 S.W.3d 53, 55 (Tex. 2015) (citation omitted); *see also* Tex. Gov't Code Ann. § 311.011(a) ("Words and phrases shall be read in

---

[6]In construing section 153.004, we adhere to the principles of a plain-meaning construction:

> When construing a statute, our primary objective is to give effect to the [*l*]egislature's intent. We seek that intent "first and foremost" in the statutory text, and "[w]here text is clear, text is determinative" of intent. "The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." When interpreting the [*l*]egislature's words, however, we must never "rewrite the statute under the guise of interpreting it," and we may not look beyond its language for assistance in determining legislative intent unless the statutory text is susceptible to more than one reasonable interpretation.

*Colo. Cty.*, 510 S.W.3d at 444 (citations omitted).

27

context . . . .").  Also, "[w]e presume the [*l*]egislature selected language in a statute with care and that every word or phrase was used with a purpose in mind."  *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010).

We reach this conclusion because subsection (a) establishes that a parent who has committed an act that would be subsumed within the definition of abuse can still be appointed as a joint managing conservator:

> In determining whether to appoint a party as a sole or joint managing conservator, the court shall consider evidence of the intentional use of abusive physical force . . . by a party directed against the party's spouse . . . within a two-year period preceding the filing of the suit or during the pendency of the suit.

Tex. Fam. Code Ann. § 153.004(a).  To read subsection (b) to mandate a single act of abuse to constitute a "history" that prohibits the appointment of a parent as a joint managing conservator creates an inherent conflict with subsection (a) and basically reads subsection (a) out of the statute.  In essence, subsection (b) would be read to mean that a single act of the intentional use of physical force constitutes a history that prohibits the appointment of a parent as a joint managing conservator while subsection (a) envisions that the parent can be appointed as a joint managing conservator but that the trial court must "consider" that act only in deciding whether to make the appointment.  Thus, the conflict is apparent.

Next, section 153.004 contains additional provisions that we view as a contradiction to the interpretation that a single act necessarily constitutes a history.  Subsection (c) provides that "[t]he court shall consider the commission of family

violence or sexual abuse in determining whether to deny, restrict, or limit the possession of a child by a parent who is appointed as a possessory conservator." *Id.* § 153.004(c). This subsection does not reference a history or pattern, and from the absence of that language, we presume that the trial court should consider a single act in making its determination. *See id.* Subsection (c) presents us with another quandary for the holding that a single act constitutes a history: How can we conclude that the legislature selected language in some provisions that allows the trial court to consider a single act and in others that requires the consideration of a history but conclude that the provisions all equate to the same meaning? We are to presume that the legislature used care in the selection of its language. *Tex. Lottery Comm'n*, 325 S.W.3d at 635. We would disregard that presumption if we drew no distinction between those provisions that require the trial court to base its decision on the consideration of a history and those that require consideration of only an isolated incident.

In turn, subsection (f) of the statute provides,

In determining under this section whether there is credible evidence of a history or pattern of past or present child neglect or abuse or family violence by a parent or other person, as applicable, the court shall consider whether a protective order was rendered under Chapter 85, Title 4, against the parent or other person during the two-year period preceding the filing of the suit or during the pendency of the suit.

Tex. Fam. Code Ann. § 153.004(f) (citation omitted). Though we do not view this subsection as being as sharp as the other contrasts that we have highlighted, this subsection suggests that a single event that prompts the issuance of a protective order

29

is a consideration in determining whether a history exists, but that single event does not demand a finding of the existence of a history. *See id.* The instruction to consider this single incident in determining whether a history exists would be unneeded if any single incident constituted a history.

### 3. The use of the word "pattern" in juxtaposition with the word "history" does not mandate that a single incident constitutes a "history."

Nor do we conclude that the juxtaposition of the words in the term "history or pattern" requires "history" to automatically mean a single event simply because "pattern" envisions multiple events. As stated above, when terms do not have a statutory definition, we generally apply their common, ordinary meaning. Tex. Gov't Code Ann. § 312.002(a) (stating that "words shall be given their ordinary meaning"); *Tex. Workforce Comm'n v. Wichita Cty.*, 548 S.W.3d 489, 492 (Tex. 2018) ("We give statutory terms 'their common, ordinary meaning unless the statute clearly indicates a different result.'" (citing *William Marsh Rice Univ. v. Refaey*, 459 S.W.3d 590, 593 (Tex. 2015))); *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018) (stating that the first principle used to analyze the meaning of words in a statute is that "[w]ords not statutorily defined bear their common, ordinary meaning unless a more precise definition is apparent from the statutory context or the plain meaning yields an absurd result").

A common, ordinary meaning is most frequently derived from the dictionary. *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 563 (Tex. 2014) ("'The place to look for

the ordinary meaning of words is . . . a dictionary." (quoting *Epps v. Fowler*, 351 S.W.3d 862, 873 (Tex. 2011) (Hecht, J., dissenting))).

The *Oxford English Dictionary*'s most apt definition of "history" is as follows:

2 The whole series of past events connected with a particular person or thing.
*'the history of the Empire'*
*'a patient with a complicated medical history'*

2.1 An eventful past.
*'the group has quite a history'*

2.2 A past characterized by a particular thing.
*'his family had a history of insanity'*

https://www.lexico.com/en/definition/history (last visited June 27, 2019). The primary definition indicates that a history is formed by a series of events rather than an isolated incident.

Certainly, the word "pattern" also involves more than one event as its most apt definition is "[a] regular and intelligible form or sequence discernible in the way in which something happens or is done." https://www.lexico.com/en/definition/pattern (last visited June 27, 2019). Thus, both words usually signal multiple events, but "pattern" suggests a similarity between the events that is lacking from the disparate events that may form a history.

We also disagree that our interpretation of the word "history" is inconsistent with a specific use of the word in the statute, and for this reason, we disagree with one aspect of the case most cited for the proposition that one incident can constitute a

31

history.  *Stein* quoted the following sentence from subsection (b):  "A history of sexual abuse includes a sexual assault that results in the other parent becoming pregnant with the child, regardless of the prior relationship of the parents."  153 S.W.3d at 489.  If *Stein*'s quotation of the sentence is read as support for the proposition that a single incident necessarily constitutes a history in all circumstances, we see a different meaning.  In our view, the legislature is specifying one act that is so heinous that the trial court must consider it to constitute a history that disqualifies the parent who committed the act from being named as a joint managing conservator; i.e., no one should be forced to co-parent with her rapist.  But to draw an implication from this sentence—that every single act must constitute a history—in our view overreads its implication.[7]

Thus, we do not interpret the word "history" to mean that a single event must constitute a history that deprives the trial court of any discretion to appoint joint managing conservators.  That interpretation is contrary to and is at odds with the definition of the word "history."  And our conclusion that a single event need not

---

[7]Indeed, a court that applied *Stein*'s definition of "history" looked to the cumulative effect of a series of events rather than their occurrence in isolation in deciding whether a history existed.  *Pesina v. Hudson*, 132 S.W.3d 133, 138–39 (Tex. App.—Amarillo 2004, no pet.) (citing *Stein*'s definition of "history" as "past events that form the subject matter of a history" in deciding that a series of events rather than isolated incidents constitutes a history of reckless driving).

constitute a history is reinforced by the contraindications to that interpretation found

within the body of section 153.004.[8]

### 4. The consequences of holding that a single act must constitute a history make that construction unreasonable.

We also conclude that a construction that automatically translates any single

event into a history is at odds with the policy of fostering co-parenting. *In re A.L.M.-*

*F.*, No. 17-0603, 2019 WL 1966623, at *7 n.62 (Tex. May 3, 2019) ("In construing a

statute, whether or not the statute is considered ambiguous on its face, a court may

consider [the] consequences of a particular construction." (quoting Tex. Gov't Code

Ann. § 311.023(5))). For example, young parents might have a rocky start to their

marriage that results in an act of abuse. That act may be followed by decades without

---

[8]We are not disregarding the use of the disjunctive in the term "history or pattern." *See Bd. of Ins. Comm'rs of Tex. v. Guardian Life Ins. Co. of Tex.*, 180 S.W.2d 906, 908 (Tex. 1944) (stating that "and" is sometimes construed as being "or," but only if "the context favors the conversion; as where it must be done in order to effectuate the manifest intention of the user; and where not to do so would render the meaning ambiguous, or result in an absurdity; or would be tantamount to a refusal to correct a mistake"). But the supreme court noted long ago that the use of "or" and "and" in statutes is not always made with surgical precision and is not a sure signal of the relationship of two words. As stated in *Witherspoon v. Jernigan*,

> Mr. Sutherland, in his work on Statutory Construction (section 252), says: "The popular use of 'or' and 'and' is so loose and so frequently inaccurate that it has infected statutory enactments. While they are not treated as interchangeable, and should be followed when their accurate reading does not render the sense dubious, their strict meaning is more readily departed from than that of other words, and one read in place of the other in deference to the meaning of the context."

76 S.W. 445, 447 (Tex. 1903).

a repetition of the act. To hold that a single act must always constitute a history means that should the parents divorce years after the act, the family court would be deprived of the ability to appoint the parents as joint managing conservators, even if the evidence indicates that they can cooperate and are capable, loving parents and have been so for years. *See Alexander*, 247 S.W.3d at 762–63 (stating that factfinder could consider the amount of time that had passed since the abusive incident in determining the weight that should be given to it in deciding whether parents should be named joint managing conservators); *Harrison*, 557 S.W.3d at 128 (same).

**5. Holding that a single act must constitute a history unreasonably restrains the trial court's discretion.**

Our construction of the word "history" adheres to a plain-meaning textual approach, but the object of the statute and the policy of Texas law also support our analysis. *See In re Xerox Corp.*, 555 S.W.3d 518, 526 n.48 (Tex. 2018) (orig. proceeding) (stating that "statutory construction includes considering the 'object sought to be obtained'" (citing Tex. Gov't Code Ann. § 311.023(1))).

Subsection (b)'s purpose appears to be based on the assumption that two people cannot be expected to cooperate to the extent necessary to co-parent when one of the parents has abused the other parent or a child.[9] We see support for this

---

[9]One law review article explains that

> [s]ubsection (b) had the only pre-SB-140 language in 153.004 that specifically limited a judge's discretion once the court found that domestic violence had occurred. When a court appoints parents as joint

assumption when there is a history or pattern of abuse, but to automatically deprive the child and the parents of the ability to co-parent based on any single incident seems to us to be hidebound. Family law judges are vested with such broad discretion in making conservatorship decisions that it appears contradictory to narrowly cabin that discretion in deciding what constitutes a history that prohibits the appointment of joint managing conservators. Making a single act an automatic disqualifier for joint managing conservatorship would preclude the trial court from providing children with the joint managing conservatorship of their parents without any regard (1) to whether a single incident indicates an ongoing potential for abuse or demonstrates that the parents are incapable of cooperating sufficiently to act as joint managing conservators, and (2) to how long ago the incident occurred and what the parents' current relationship indicates.

Finally, the family code embodies the policy of co-parenting with its rebuttable presumption that joint managing conservatorship is in the best interest of the child. Tex. Fam. Code Ann. § 153.131(b). That section removes the presumption only upon

---

managing conservators, it is under the premise that both parents will "share in the rights and duties of raising their child after the parents have separated or dissolved their marriage." When abuse has occurred in the family, this premise is no longer workable. In fact, by appointing the parents as joint managing conservators, the court is, essentially, ordaining the continued abuse of the victim, whether the victim is the parent or the child.

Shelly Holcomb, *Senate Bill 140: How Much Did It Change Texas Family Code Section 153.004?*, 9 Tex. Wesleyan L. Rev. 121, 130–31 (Fall 2002) (footnotes and citations omitted).

"[a] finding of a history of family violence." *Id.* If the legislature wanted to make every event of abuse or violence an act that removed the presumption of joint managing conservatorship, it is reasonable to assume that it would have selected a word other than "history," which has a definition usually requiring more than one event.[10] The withdrawal of the presumption only upon the showing of a "history" reinforces our construction of section 153.004 as giving the trial court discretion to decide whether there is such a history of abuse that the parents cannot act in a joint parenting role.

**6. Conclusion: The trial court has the discretion to determine what constitutes a history or pattern of abuse or violence, and a single incident does not mandate that finding.**

The path we have taken shows the varied and imprecise guidance section 153.004 gives to trial courts in deciding how family violence and abuse impacts the appointment of joint managing conservators; the confused state of the caselaw that focuses on what constitutes a history; and our construction of section 153.004. This arduous trip compels us to conclude (1) that the word "history" in section 153.004(b) leaves the trial court with the discretion to decide whether a parent's acts rise to the level of a history that disqualifies him or her from being appointed as a joint managing conservator, and (2) that a single act, even if its occurrence is undisputed, does not necessarily mandate a finding that a history of abuse exists.

---

[10]We do not know why the word "pattern" is not juxtaposed with the word "history" in section 153.131(b) when "pattern" is used repeatedly in section 153.004.

36

### 7. The trial court did not abuse its discretion by appointing Mother as a joint managing conservator.

Our construction of the use of the word "history" in section 153.004(b) undermines the central premise of Father's appeal. In his first three issues, Father attacks each of the trial court's findings and conclusions that give Mother primary parenting responsibilities for the children and the finding that she does not have a history or pattern of family violence or physical abuse. But the attack's focus is on Finding No. 8—"[Mother] does not have a history or pattern of committing family violence or physical abuse during the two years preceding the date of filing of this suit or during the pendency of this suit"—and on Conclusion No. 6—"Appointing [Mother] as a joint managing conservator does not violate Section 153.004 of the Texas Family Code." The premise of the legal and factual sufficiency challenges to the finding and the de novo attack on the conclusion is that Mother's conduct when she brought a gun into the dispute constitutes, by definition, a history of family violence or physical abuse that disabled the trial court from giving Mother the parenting responsibilities that it did.

We disagree with that premise. While nothing in this opinion should be read to downplay the seriousness of Mother's acts, we do not read the use of the word "history" in section 153.004 to mandate that a single act constitutes a history and to

deprive the trial court of the discretion to make the decisions that it made in this case.[11]

### 8. Clarification: Mother committed an act of abuse or family violence by her display of a handgun during her quarrel with Father.

We do want to make one point clear and will dispose of one argument raised by the parties. Mother spends some time in her brief arguing that the evidence does not support a finding that she intended to shoot Father. Father argues that whether Mother intended to shoot him is irrelevant in the determination of whether abuse occurred. Whether the shot was fired intentionally or not holds no sway in our decision. Mother acknowledged that she intentionally displayed a deadly weapon to persuade Father to give her his phone. That act, even without a shot being fired, is one that conclusively establishes the various standards of abuse or violence found in section 153.004.

---

[11]Our holding is not in direct conflict with this court's prior opinions in *V.S.*, 2018 WL 6219441, at *7–8, and *J.M.*, 2017 WL 3821863, at *4. In *V.S.*, the trial court made a finding that there was a history of domestic violence between mother and father and made a corresponding conclusion of law that sufficient credible evidence had been presented to the court of a history or pattern of physical abuse by mother against the other parent. 2018 WL 6219441, at *5–6. Similarly, in *J.M.*, based on the evidence it heard, "[a]t the trial's conclusion, the trial court affirmatively stated on the record that there was a history of family violence." 2017 WL 3821863, at *2. Here, the trial court made the opposite finding. With this difference in the findings of the trial court, our holding would not preclude the holding that *V.S.* or *J.M.* reached.

Nor does our holding conflict with this court's decision in *M.M.M.*, 307 S.W.3d at 851–54. Although *M.M.M.* cites the dicta from *R.T.H.*, referencing that a single act of violence may constitute a history, the facts in *M.M.M.* reflect that the father had been arrested four or five times for assaulting the mother. *Id.* at 851 n.2, 853. Thus, *M.M.M.* is distinguishable on its facts.

It is common sense that the display of a deadly weapon carries with it the threat of violence. For example, the criminal law is clear that "[t]he display of a deadly weapon of and within itself constitutes a threat of the required imminent harm" that is sufficient to meet the elements of aggravated assault. *See Sosa v. State*, 177 S.W.3d 227, 231 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (examining elements of aggravated assault found in Texas Penal Code sections 22.01(a)(2) and 22.02(a)(2)).

Such a threat brings the act within the various standards sprinkled throughout section 153.004. First, the act constitutes the "intentional use of abusive physical force," which is the standard the trial court should consider in subsection 153.004(a) in deciding whether to appoint joint managing conservators. *See* Tex. Fam. Code Ann. § 153.004(a). The act also meets the definition of "abuse" that this court adopted in *J.M.* in deciding whether an act constitutes physical abuse as that term is used in section 153.004(b). 2017 WL 3821863, at *4. Specifically, "abuse" means "'[c]ruel or violent treatment of someone, specif., physical . . . maltreatment, often resulting in . . . physical injury.'" *Id.* (quoting *Black's Law Dictionary*). It is cruel and violent treatment to introduce a handgun into a quarrel. *Cf.* Tex. Fam. Code Ann. § 261.001(1)(C) (defining "abuse" as "the genuine threat of substantial harm from physical injury to the child").

Such an act is one that meets the definition of "family violence" because it is "a threat that reasonably places the member in fear of imminent physical harm, bodily injury, [or] assault." *Id.* § 71.004; *see id.* § 153.004(c) (requiring consideration of family

39

violence in determining whether to restrict possessory conservatorship), (d) (denying access when there is a history or pattern of family violence in the two years preceding the filing of suit), (e) (establishing rebuttable presumption that it is not in the best interest of the child to have unsupervised visitation when there is credible evidence of a history or pattern of family violence).

No matter the different terms found in section 153.004, we will not be a party to a holding that underplays the significance of introducing a gun into a domestic dispute.

Thus, we do not downplay the seriousness of Mother's conduct. But Father's appeal pivots on the assumption that Mother's single act constitutes a history. Father's argument is certainly supported by the cases holding that a single incident can or does constitute a history. But that view is not the only one found in caselaw. And we hold that the language of section 153.004 signals a different conclusion. Neither the dictionary definition nor the context of the use of the word "history" within that section supports Father's view. There may be circumstances in which a single incident may indicate a history of abuse, but our question is whether it is outside the trial court's discretion to make that determination. To answer what we perceive as primarily a legal question involving the construction of section 153.004, we hold that conclusive proof of a single incident does not compel a finding that a history of abuse

exists. Thus, the trial court's findings and conclusion in this case do not constitute a legal error demonstrating an abuse of discretion.[12]

### 9. The trial court did not abuse its discretion in granting Mother access to and unsupervised visits with the children.

Father also challenges whether the trial court had the discretion to permit Mother to have access or unsupervised visits with the children. But these challenges also turn on the premise that the evidence conclusively establishes a history of family violence or physical abuse.

We repeat the language of the two subsections of section 153.004 that are in play in this argument. First, subsection (d) provides, "The court may not allow a parent to have access to a child for whom it is shown by a preponderance of the evidence that: (1) there is a history or pattern of committing family violence during the two years preceding the date of the filing of the suit or during the pendency of the suit . . . ." *Id.* § 153.004(d). Father contends that the record does not support the action of the trial court that permits a parent access to a child in the face of a history

---

[12]We also note that this case is a prime example of the difficult decisions that trial courts face when they exercise discretion in deciding custody cases. Here, the trial court had to weigh the conflicting portrayals of Father and Mother's parenting abilities, their ability to co-parent in the face of the "history" that existed between them by the time of the bench trial, and the concern that the children have both parents in their lives. The trial court itself described this as a difficult case that it would resolve only after "long and hard" thought.

of family violence. *See id.* § 153.004(d–1) (permitting access based on specific findings).[13]

Second, subsection (e) provides,

It is a rebuttable presumption that it is not in the best interest of a child for a parent to have unsupervised visitation with the child if credible

___

[13]Section 153.001(d–1) states,

Notwithstanding Subsection (d), the court may allow a parent to have access to a child if the court:

(1) finds that awarding the parent access to the child would not endanger the child's physical health or emotional welfare and would be in the best interest of the child; and

(2) renders a possession order that is designed to protect the safety and well-being of the child and any other person who has been a victim of family violence committed by the parent and that may include a requirement that:

(A) the periods of access be continuously supervised by an entity or person chosen by the court;

(B) the exchange of possession of the child occur in a protective setting;

(C) the parent abstain from the consumption of alcohol or a controlled substance, as defined by Chapter 481, Health and Safety Code, within 12 hours prior to or during the period of access to the child; or

(D) the parent attend and complete a battering intervention and prevention program as provided by Article 42.141, Code of Criminal Procedure, or, if such a program is not available, complete a course of treatment under Section 153.010.

*Id.*

evidence is presented of a history or pattern of past or present child neglect or abuse or family violence by:

(1) that parent[.]

*Id.* § 153.004(e). In the face of what he considers to be a history of family violence, Father claims that Mother failed to overcome the rebuttable presumption that she should not have unsupervised access.

But the additional burdens that Father claims Mother bore to obtain access and unsupervised visits turn on his contention that the trial court erred by finding that Mother did not have a history or pattern of family violence or physical abuse. We presume that the use of the word "history" in subsection (b) is the same in subsections (d–1) and (e). *See Brazos Elec. Power Coop. v. Tex. Comm'n on Envtl. Quality*, No. 17-1003, 2019 WL 1966835, at *6 (Tex. May 3, 2019) ("Moreover, '[s]tatutory terms should be interpreted consistently in every part of an act.'" (quoting *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002))). With our holding that the trial court did not abuse its discretion on this issue, the triggers for Father's assertion that Mother bore the additional burdens disappear. Accordingly, we overrule Father's first three issues.

### III. Legally and factually sufficient evidence supports the trial court's determination that Mother is entitled to the rights of managing conservatorship specified in the parties' divorce decree because she returned to Tarrant County by June 1, 2018.

As noted above, many of the provisions of the divorce decree dealing with conservatorship depended on Mother's return to Tarrant County by June 1, 2018.

43

After an evidentiary hearing, the trial court determined that Mother had returned by that date. In his fourth issue, Father contends that the evidence is legally and factually insufficient to support this finding. The record contains evidence that is sufficient to support the trial court's determination under either sufficiency measure.

Mother filed a Petition for Writ of Habeas Corpus claiming that Father had refused to return the children to her because he contended that she had not returned to Tarrant County by the June 1 deadline contained in the divorce decree. The trial court conducted a hearing on the petition. At the hearing, Mother's Tarrant County probation officer testified that Mother had notified her in May 2018 that she had returned to Tarrant County and was working in the county. The probation officer testified that Mother gave her a Tarrant County address when they spoke. Records from the probation department included a document dated May 16, 2018, which assigned Mother a Tarrant County probation officer.

Mother testified that she returned to Tarrant County at the end of April, initially stayed in hotels, and secured employment. To counter a claim by Father that she was receiving Section 8 benefits for housing in Georgia, she explained that the Section 8 payments reflected a governmental benefit received by the tenant of a property she owned and not one that she received for her own housing.

Father's cross-examination of Mother highlighted gaps in the proof she offered. A lease in Tarrant County executed by Mother did not commence until well after the June 1 deadline and a pay stub she offered to establish her employment in

44

Tarrant County did not reflect the location of the business where she claimed employment.

Father also testified at the hearing and claimed that Mother had never told him, given him notice, or provided him with proof that she had returned to Tarrant County by the June 1 deadline. Father interpreted requests for weekend visitation made by Mother as an indication that she was travelling to Texas for the visits but acknowledged that he did not know where she was when she made the requests.

The trial court orally ordered that Father surrender the children to Mother and subsequently entered a written order reflecting that ruling. In response to Father's assertion in his motion for new trial that the decree was ambiguous, the trial court also entered an order "to clarify ambiguity by including a finding that [Mother] moved back to Tarrant County by June 1, 2018[,] thus fulfilling the requirements to obtain primary managing conservatorship of the children."

Without explanation, Father contends that none of Mother's evidence "satisfied the trial court's ambiguous rendition to return to Tarrant County by June 1, so the trial court abused its discretion." Father's factual challenge turns on the contention that Mother was initially living in hotels and with friends when she first returned. Further, Father highlights his own testimony that she never told him that she had actually returned to Tarrant County.

The testimony of Mother and the probation officer—that Mother had returned to and was working in Tarrant County—constitutes more than a scintilla of evidence

to support a finding that Mother complied with the decree. *See J.A.S. v. A.R.D.*, No. 02-17-00403-CV, 2019 WL 238118, at *3 (Tex. App.—Fort Worth Jan. 17, 2019, no pet.) (mem. op.) ("An abuse of discretion does not occur as long as some evidence of substantive and probative character exists to reasonably support the trial court's decision."). Father's abuse-of-discretion claim based on a factual sufficiency challenge is directed toward his disagreement with the trial court's credibility determinations; it does not support his claim that the level of evidence supporting the finding is so factually insufficient that the trial court abused its discretion. *See id.* (stating that in conservatorship determinations, "[i]t is for the factfinder to determine the weight to be given to the testimony and to resolve any conflicts in the evidence"). We overrule Father's fourth issue.

## IV. Conclusion

Having carefully analyzed the four issues raised by Father and having overruled each of them, we affirm the trial court's judgment.

/s/ Dabney Bassel
Dabney Bassel
Justice

Delivered: July 3, 2019